1    LAWRENCE G. BROWN
     United States Attorney
2    BOBBIE J. MONTOYA
     Assistant U.S. Attorney
3    501 I Street, Suite 10-100
     Sacramento, California 95814-2322
4    Telephone: (916) 554-2775

5    Attorneys for Defendant
     U.S. Small Business Administration
6

7

8                 IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | | |
|---|---|---|
12 | BLX CAPITAL, LLC, | Case No. |
| a Delaware limited liability company, | |
13 |          Plaintiff, | NOTICE OF REMOVAL OF CIVIL ACTION |
14 |      v. | BY DEFENDANT UNITED STATES SMALL |
| | BUSINESS ADMINISTRATION |

15    SAMJIN GENERAL SUPPLY, INC. dba
     SAM JIN ROOFING SUPPLY, a
16    California corporation; MASON AU, an
     individual; NANJOO AU, an individual;
17    U.S. SMALL BUSINESS
     ADMINISTRATION, a United States
18    government agency; WABASH
     NATIONAL TRAILER CENTERS, INC.,
19    and DOES 1 through 20, inclusive,

20          Defendants.

21

22

23       TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

24    THE EASTERN DISTRICT OF CALIFORNIA:

25        PLEASE TAKE NOTICE that the above-captioned action is hereby removed from

26    California State Court to the United States District Court pursuant to 28 U.S.C. §§ 1442 and 1444.

27       Defendant United States Small Business Administration (hereinafter "SBA"), by the

28    undersigned attorney, respectfully represents the following:

1.  That defendant SBA is named in a civil action now pending in the Superior Court of California for the County of Yolo, entitled *BLX Capital, LLC v. Samjin General Supply, Inc., et al.*, Case No. CV09-1729.  A copy of the State Court pleading is attached hereto as Exhibit A.

2.  That the above-described state court action is one that may be removed pursuant to 28 U.S.C. §§ 1442 and 1444 for the reasons that:

(a)  The plaintiff in said action seeks to foreclose on property in which defendant SBA has a lien;

(b)  No trial has yet been had in the state court in this action;

(c)  Defendant SBA is an agency of the United States;

(d)  Section 1442(a)(1) of Title 28, United States Code, expressly permits the removal of actions against the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof; and

(e)  Section 1444 of Title 28, United States Code, expressly permits the removal of an action against the United States affecting property on which the United States has a lien. *See* 28 U.S.C. § 2410.

WHEREFORE, defendant SBA respectfully submits this notice and hereby removes the above-described state court action from the Superior Court of California for the County of Yolo to this Court.

Respectfully submitted,

DATED: August 31, 2009

LAWRENCE G. BROWN
United States Attorney

By:    */s/ Bobbie J. Montoya*
BOBBIE J. MONTOYA
Assistant U.S. Attorney

OF COUNSEL:

JILL C. HOBBY
Special Assistant U.S. Attorney
Small Business Administration
Sacramento District Office
6501 Sylvan Road, Suite 100
Citrus Heights, CA  95610

# Exhibit A

1   LEVY, SMALL & LALLAS
    A Partnership Including Professional Corporations
2   LEO D. PLOTKIN (SBN 101893)
    BRADLEY I. KRAMER (SBN 234351)
3   815 Moraga Drive
    Los Angeles, California  90049
4   Telephone:    (310) 471-3000
    Facsimile:    (310) 471-7990
5
    Attorneys for Plaintiff
6   BLX CAPITAL, LLC

7

    F I L E D
    YOLO SUPERIOR COURT

    JUL 0 8 2009

    BY____G. REYNOLDS
            DEPUTY

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          FOR THE COUNTY OF YOLO

10

11  BLX CAPITAL, LLC,                     Case No.  CV C 9 - 1 7 2 9
    a Delaware limited liability company,
12                                        COMPLAINT FOR:
                   Plaintiff,
13                                        1. JUDICIAL FORECLOSURE
          vs.                             2. SPECIFIC PERFORMANCE OF
14                                           ASSIGNMENT OF RENTS AND
    SAMJIN GENERAL SUPPLY, INC. dba SAM       APPOINTMENT OF RECEIVER
15  JIN ROOFING SUPPLY, a California      3. INJUNCTIVE RELIEF
    corporation; MASON AU, an individual;
16  NANJOO AU, an individual; U.S. SMALL
    BUSINESS ADMINISTRATION, a United
17  States government agency; WABASH
    NATIONAL TRAILER CENTERS, INC., and
18  DOES 1 through 20, inclusive,

19                 Defendants.

20

21

22

23

24

25

26

27

28

---

                              COMPLAINT

1        Plaintiff BLX Capital, LLC ("BLX") hereby alleges and complains against defendants

2  Samjin General Supply, Inc. dba Sam Jin Roofing Supply ("Samjin"), Mason Au ("Mason"),

3  Nanjoo Au ("Nanjoo"), the U.S. Small Business Administration (the "SBA"), Wabash National

4  Trailer Centers, Inc. ("Wabash") and Does 1-20 (collectively, "Defendants") as follows:

5                <u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

6      A.     The Parties.

7        1.     BLX is a limited liability company duly organized and existing under the laws of

8  the State of Delaware, with its principal place of business in the State of New York, and duly

9  authorized to do business in the State of California.

10       2.     BLX is informed and believes and thereon alleges that Samjin is a corporation

11  duly organized and existing under the laws of the State of California, with its principal place of

12  business located at 2250 East 12th Street, Oakland, California, 94606.

13       3.     BLX is informed and believes, and thereon alleges, that defendant Mason is an

14  individual residing in the County of Contra Costa, State of California.

15       4.     BLX is informed and believes, and thereon alleges, that defendant Nanjoo is an

16  individual residing in the County of Contra Costa, State of California.

17       5.     BLX is informed and believes, and thereon alleges, that Mason and Nanjoo

18  (collectively, the "Individuals") have done business as or are doing business as, among other

19  things, Samjin.

20       6.     BLX is informed and believes and thereon alleges that the SBA is a United States

21  government agency duly organized and existing under the laws of the United States, and having a

22  business address in California of 650 Capitol Mall, Suite 7-500, Sacramento, CA, 95814.

23       7.     BLX is informed and believes and thereon alleges that the Wabash is a

24  corporation duly organized and existing under the laws of the State of Delaware, with its

25  principal place of business located at P.O. Box 6129, Lafayette, IN 47903, and with an address

26  for service of process in California of 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA

27  95833.

28

COMPLAINT

8.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 20, inclusive, are unknown to BLX, who therefore sues said defendants by such fictitious names.  BLX will amend this Complaint to show their true names and capacities when the same have been ascertained.

9.    BLX is informed and believes, and on that basis alleges, that the defendants named herein as Does 1 through 20, inclusive, and each of them, are the agents, co-conspirators or representatives of one another or have, or claim to have, some right, title or interest in or lien upon ("Interest") the Property (defined below) or in the rents, issues and profits therefrom. Plaintiff is further informed and believes, and on that basis alleges, that the Interests, if any, of said defendants, and each of them, are subsequent to and inferior to Plaintiff's rights in the Property and the rents, issues and profits derived therefrom.

10.    BLX is informed and believes and thereon alleges that defendants Samjin, the Individuals, the SBA, Wabash, and Does 1 through 20, inclusive, and each of them, were the agents, servants, and employees or each of the other, and in doing and suffering the acts hereinafter alleged, each was acting in such capacity and within the relative scope of his or her authority.

**B.    The Real Property.**

11.    Samjin and/or the Individuals are the record owner of certain real property located in the County of Yolo, State of California commonly known as 3600 West Capital Avenue, Sacramento, California 95691 (the "Property") and legally described as follows:

Real Property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOURTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE

COMPLAINT

HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A
POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY
RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH
50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF
WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE
CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST
CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES'";
THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF
BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN
THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964
IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN. 008-030-13-1

C.      The Letter Loan Agreement, Promissory Note, Deed of Trust With
        Assignment of Rents, Assignment of Leases and Rents, and Security
        Agreement.

        12.     On or about September 26, 2005, Samjin and the Individuals executed and
delivered to BLX a letter loan agreement (the "Loan Agreement") whereby BLX agreed to loan
money to Samjin and to the Individuals in a principal sum of $1,780,000.00, a true and correct
copy of which is attached hereto as Exhibit "A" and incorporated by reference herein.

        13      On or about September 26, 2005, Samjin and the Individuals executed and
delivered to BLX a written Promissory Note in the principal sum of $1,780,000.00 (the "Note"),
a true and correct copy of which is attached hereto as Exhibit "B" and incorporated by reference
herein.

        14.     Pursuant to the Loan Agreement and Note, BLX made a loan to Samjin and the
Individuals in the sum of $1,780,000.00 (the "Loan"), and Samjin and the Individuals agreed to
repay the Loan, with interest, in monthly installments.

        15.     BLX has performed all of its obligations, if any, pursuant to the Loan Agreement
and Note, except to the extent performance was waived, excused or discharged by reason of the
conduct of Samjin and/or the Individuals.

16.     To secure the obligations of Samjin and the Individuals under the Note, on or about September 26, 2005, the Individuals executed a written Deed of Trust with Assignment of Rents (the "Samjin Trust Deed") whereby the Individuals conveyed their interest in the Property to First American Title Company, as trustee, for the benefit of BLX, as beneficiary. The Samjin Trust Deed was recorded on September 27, 2005 as Document No. 2005-0048140 in the official Records of the County of Yolo, State of California. A true and correct copy of the Samjin Trust Deed is attached hereto as Exhibit "C" and incorporated by reference herein.

17.     To further secure the obligations of Samjin and the Individuals under the Note, on or about September 23, 2005, the Individuals executed an Assignment of Leases and Rents (the "Assignment of Rents") pursuant to which the Individuals absolutely and unconditionally assigned and granted to BLX, among other things, all right title and interest to all existing and future leases affecting the Property, together with the buildings, structures, fixtures, additions, and improvements to the Property, as well as all rents, revenues, income, issues and profits arising in connection with the Property (the "Rents"). A true and correct copy of the Assignment of Rents is attached hereto as Exhibit "D" and incorporated by reference herein.

18.     On or about September 14, 2005, the Individuals executed a written Deed of Trust with Assignment of Rents whereby the Individuals conveyed their interest in the Property and associated collateral to First American Title Insurance Company, as trustee, for the benefit of EDF Resource Capital, Inc. ("EDF"), as beneficiary (the "EDF Trust Deed"). On or about September 14, 2005, EDF executed a Corporation Assignment of Deed of Trust whereby EDF granted, assigned, and transferred its interest in the EDF Trust Deed to the SBA. The EDF Trust Deed and Corporation Assignment of Deed of Trust were recorded on September 27, 2005 as Document Nos. 2005-0048145 and 2005-0048146 in the official Records of the County of Yolo, State of California. True and correct copies of the EDF Trust Deed and Corporation Assignment of Deed of Trust are attached collectively hereto as Exhibit "E" and incorporated by reference herein.

-4-

COMPLAINT

**D.     The Subordination Agreements.**

19.     On or about September 14, 2005, Samjin, who, on information and belief, was the legal occupant and tenant of the Property, executed a Subordination of Leasehold Interest agreement pursuant to which Samjin unconditionally subordinated its interest in the Property to the EDF Trust Deed. On or about September 14, 2005, Wabash, who, on information and belief, was also a legal occupant and tenant of the Property, executed a Subordination of Leasehold Interest agreement pursuant to which Wabash unconditionally subordinated its interest in the Property to the EDF Trust Deed.   True and correct copies of the Samjin and Wabash Subordination of Leasehold agreements are attached collectively hereto as Exhibit "F" and incorporated by reference herein.

20.     On or about September 23, 2005, Samjin, who, on information and belief, was the legal occupant of the Property, executed a Subordination, Non-Disturbance and Attornment Agreement pursuant to which Samjin unconditionally subordinated its interest in the Property to the BLX Trust Deed.  The Subordination, Non-Disturbance and Attornment Agreement was recorded on September 30, 2005 as Document No. 2005-0049197 in the official Records of the County of Yolo, State of California, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated by reference herein.

21.     On or about October 4, 2005, BLX and EDF entered into a Third Party Lender Agreement pursuant to which EDF subordinated its interest in the Property and to the associated collateral to that of BLX.   The Third Party Lender Agreement was recorded on March 2, 2006 as Document No. 2006-0008505 in the official Records of the County of Yolo, State of California. A true and correct copy of the Third Party Lender Agreement is attached hereto as Exhibit "H" and incorporated by reference herein.

**E.     The Demand for Payment.**

22.     On or about May 29, 2009, demand for payment letters (the "Demand for Payment Letters") were sent by BLX to Samjin and to each of the Individuals stating that the Loan Agreement and Note were in default, accelerating the amount due and owing under the Note, and

COMPLAINT

1    demanding full payment of all amounts due and owing under the Note by or before June 15,

2    2009. Despite demand, neither Samjin nor either of the Individuals has paid the amounts due and

3    owing to BLX. True and correct copies of the Demand for Payment Letters are attached hereto

4    as Exhibit "I" and incorporated by reference herein

5                            **FIRST CAUSE OF ACTION**

6                          **Judicial Foreclosure of Trust Deed**

7                            **(Against All Defendants)**

8        23.    BLX repeats and realleges each and all of the allegations of paragraphs 1 through

9    22, inclusive, as though set forth in full herein.

10       24.    BLX is now, and at all relevant times herein has been, the lawful owner and

11   holder of the Note, and the beneficial interest holder of the Samjin Trust Deed.

12       25.    Samjin and the Individuals have defaulted under the Note in that, among other

13   things, they (a) have failed to make any payments due and owing to BLX since January 10, 2009,

14   in the aggregate amount of approximately $58,337.98.

15       26.    Pursuant to the Note and the Demand for Payment Letters, the entire indebtedness

16   due and owing on the Loan has been accelerated and is now due and payable in full in the sum of

17   $1,766,762.45 as of May 19, 2009, with interest accruing thereafter at the daily rate of $230.92

18   and with all fees, charges, and expenses due under the Note (the "Indebtedness").

19       27.    As a result of the default under the Note, BLX is entitled, among other things, to

20   (a) foreclose on the Samjin Trust Deed, (b) sell the Property and any of the associated collateral

21   that may be sold therewith, (c) obtain a deficiency judgment against Samjin, the Individuals,

22   and/or Does 1 through 10 for the unpaid sum of the Indebtedness, and (d) such other and further

23   relief as is set forth in the Prayer for Relief as to this First Cause of Action.

24       28.    BLX has been required to retain, and has retained the law firm of Levy, Small &

25   Lallas, a Partnership Including Professional Corporations, to institute this action and enforce the

26   obligations of Samjin and the Individuals. As a result, BLX has incurred and will continue to

27   incur attorneys' fees and expenses and other costs.

28

COMPLAINT

1        29.    Pursuant to Paragraph B(5)(f) of the Samjin Trust Deed, BLX is entitled to

2   recover its attorney's fees and costs herein.

3   **SECOND CAUSE OF ACTION**

4   **For Specific Performance of Assignment of Rents and Appointment of Receiver**

5   **Provisions in the Samjin Trust Deed and Assignment of Rents**

6   **(Against All Defendants)**

7        30.    BLX repeats and realleges each and all of the allegations of paragraphs 1 through

8   29, inclusive, as though set forth in full herein.

9        31.    BLX is informed and believes, and on that basis alleges, that Samjin and/or the

10  Individuals are presently in possession and/or are the record owners of the Property.  BLX is

11  further informed and believes, and thereon alleges, that Samjin and/or the Individuals are

12  collecting Rents from the Property (the "Rents").

13       32.    Pursuant to Paragraph B(5)(a) of the Samjin Trust Deed and Article I of the

14  Assignment of Rents, BLX is entitled to collect and to possess all of the Rents.  Any claims of

15  Samjin and/or the Individuals to the Rents are junior in priority to BLX's right in and to the

16  Property and in and to the Rents.

17       33.    The Samjin Trust Deed and the Assignment of Rents provide that, upon default by

18  Samjin and/or the Individuals under the Deed of Trust, Plaintiff is entitled – either in its own

19  capacity or by a court-appointed receiver – to enter on and take possession of Samjin's and/or the

20  Individuals' interest in the Property and collect all Rents generated by the Property.  BLX is

21  therefore entitled to specific performance of the appointment of a receiver under the terms of the

22  Samjin Trust Deed and the Assignment of Rents.

23       34.    Unless a receiver is appointed to manage and maintain the Property, the interests

24  of BLX in and to the Property and in and to the Rents will be impaired, and BLX will incur great

25  and irreparable damage, injury and harm.

26       35.    The Samjin Trust Deed and the Assignment of Rents provide that if any action or

27  proceeding is necessary to enforce BLX's rights thereunder, Samjin and/or the Individuals will

28

-7-

COMPLAINT

1   pay all of BLX's costs, including, but not limited to, reasonable attorneys' fees incurred in any

2   such action or proceeding.

3                         **THIRD CAUSE OF ACTION**

4                           **For Injunctive Relief**

5                         **(Against All Defendants)**

6        36.     BLX repeats and realleges each and all of the allegations of paragraphs 1 through

7   35, inclusive, as though set forth in full herein.

8        37.     Plaintiff seeks an injunction prohibiting Samjin and/or the Individuals, and each

9   of them, from using, dissipating, disposing of, or encumbering the Rents arising from the

10   Property, or from in any way interfering with the receiver's performance of the receiver's duties

11   and to relinquish possession of the Property, and an order requiring Samjin and/or the Individuals

12   to turn over to the receiver all books and records associated with the Property.

13

14                         **PRAYER FOR RELIEF**

15     **WHEREFORE**, BLX prays for judgment against Defendants as follows:

16     1.     On the First Cause of Action, (a) for damages in the sum of at least $1,766,762.45

17   as of May 19, 2009, with interest accruing thereafter at the daily rate of $230.92 and with all fees,

18   charges, and expenses due under the Note, through the date of judgment, and (b) for a judgment

19   against all Defendants and Does 1-10:

20             a.     That all rights, claims, ownership, liens, titles and demands of any or all of

21                    the Defendants are subsequent to and subject to the lien of the Samjin

22                    Trust Deed;

23             b.     That (i) the Samjin Trust Deed be foreclosed, (ii) the Property be sold,

24                    together with such of the associated collateral as may be included in such

25                    sale, according to law by a levying officer to be appointed by the Court,

26                    (iii) BLX may become a purchaser at the sale, (iv) the proceeds of sale be

27                    applied in payment of the Indebtedness, (v) all Defendants and Does 1-10,

28

1      and any or all persons claiming rights subordinate to Samjin and Does 1-

2      10, after execution of the Samjin Trust Deed, whether as lien claimant,

3      judgment creditor, claimant under a junior trust deed, purchaser,

4      lienholder, or otherwise, be barred and foreclosed from all rights, claims,

5      interests, or equity of redemption in the Property and every part of the

6      Property when the time for redemption has elapsed, (vi) the levying

7      officer, after the time for redemption has elapsed, shall execute a deed to

8      the purchaser of the Property at the sale, and (vii) the purchaser shall be let

9      into possession of the Property on production of the levying officer's deed;

10      and,

11      c.      That Samjin, the Individuals, and Does 1-10 are personally liable for

12      payment of the Indebtedness and that a deficiency judgment may be

13      entered against Samjin, the Individuals, and Does 1-10, jointly and

14      severally.

15      2.      On the Second Cause of Action, for an order by this Court appointing a receiver

16 during the pendency of this action with the usual duties of receivers so appointed to, among other

17 things, (i) manage the Property and all personal property and fixtures connected thereto;

18 (ii) collect all Rents and hold said Rents until after the Property is foreclosed and sold;

19 (iii) market and rent the Property; (iv) if necessary, issue one or more receivers certificates; and

20 (v) take all action necessary and customarily performed by receivers to accomplish the foregoing.

21      3.      On the Third Cause of Action, for an order by this Court restraining Samjin and/or

22 the Individuals from the further use, dissipation, disposition and encumbrance of the Rents, and

23 restraining any interference with the receiver's performance of the receiver's duties.

24      4.      And on all causes of action alleged herein, for:

25      a.      Attorney's fees and costs of suit incurred herein; and

26      b.      Such other and further relief as the Court may deem just and proper.

27

28

COMPLAINT

1

2    DATED:  July 6, 2009                    LEVY, SMALL & LALLAS
                                             A Partnership Including Professional Corporations
3                                            LEO D. PLOTKIN
                                             BRADLEY I. KRAMER
4

5                                            By: _____

6                                                BRADLEY I. KRAMER
                                                 Attorneys for Plaintiff
7                                                BLX CAPITAL, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-10-

COMPLAINT

LETTER LOAN AGREEMENT
(non construction)

*September 16,* 2005

BLX Capital, LLC
Independence Corporate Park
One Independence Pointe, Suite 102
Greenville, SC 29615

Re:    $1,780,000.00 Loan (the "Loan") by BLX Capital, LLC ("Lender") to Mason Au
and Nanjoo Au and SAMJIN GENERAL SUPPLY, INC. dba Sam Jin Roofing
Supply ("Borrower") for the acquisition of the land more particularly described on
<u>Exhibit "A"</u> attached hereto and certain improvements (the "Improvements")
located thereon (collectively, the "Land")

Gentlemen:

In order to finance the acquisition of the Land and related costs, you, as Lender, have
agreed to loan to the Borrower, and the Borrower has agreed to borrow from the Lender, a
principal sum not in excess of $1,780,000.00 (the "Loan") subject to the terms and conditions
hereafter stated in this Letter Loan Agreement:

1.    It is understood and agreed that the Borrower will execute contemporaneously
herewith or immediately hereafter all of the documents involved in the Loan and Borrower agrees
to do all things necessary to insure that all of said documents remain outstanding and enforceable
in accordance with their terms during the full term of the Loan. The documents executed are all
of even date herewith and include a promissory note to Lender in the amount of $1,780,000.00
(the "Note") a Deed of Trust (with Security Agreement, Assignment of Rents and Financing
Statement) securing the Note and other documents securing or relating to the Loan (the "Loan
Documents").

2.    The obligation of the Lender to advance the loan proceeds hereunder is and shall be
subject to the prior or simultaneous occurrence or satisfaction of each of the following conditions:

(a)    Lender shall have received such instruments and documents as the
Lender may specify, and in such form and content and containing such
certifications, approvals and other data and information as the Lender may
reasonably require.



EXHIBIT A

(b)     Policies of insurance (completed value reporting form, including coverage, and, if requested, all risk coverages), comprehensive liability insurance, fire and extended coverage insurance in an amount acceptable to Lender, each with loss payable clauses in favor of the Lender, and workmen's compensation insurance, in such forms and amounts and issued by an insurer reasonably satisfactory to Lender, shall have been delivered to the Lender and shall be currently in force.

(c)     There shall currently exist no event of default under any of the Loan Documents securing the Loan.

(d)     The Improvements shall not have been materially injured, damaged or destroyed by fire or other casualty, nor shall the Improvements or any part of the Project be subject to condemnation proceedings or negotiations for sale in lieu thereof.

3.     The occurrence of any of the following shall constitute Events of Default hereunder.

(a)     Borrower shall fail to comply with the provisions of this Letter Loan Agreement.

(b)     If a default shall occur under any of the Loan Documents securing the Loan.

(c)     If the Borrower shall (i) apply for or consent to the appointment of a receiver, trustee, or liquidator, (ii) admit in writing his inability to pay his debts as they mature, (iii) make a general assignment for the benefit of creditors, (iv) be adjudicated a bankrupt or insolvent, or (v) file a voluntary petition in bankruptcy or file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any insolvency law or an answer admitting the material allegations of a petition filed against Borrower in any bankruptcy or insolvency proceeding.

(d)     If an order, judgment or decree shall be entered, without the application, approval or consent of the Borrower or any guarantor of the Loan, by any court of competent jurisdiction appointing a receiver, trustee or liquidator of the Borrower or any guarantor or of all or a substantial part of the assets of the Borrower, or any guarantor, and such order, judgment or decree shall continue unstayed and in effect for a period of sixty (60) consecutive days.

(e)     If any levy, attachment or garnishment be issued, or if any lien for the performance of work or the supply of materials be filed against the Land or the Project and remain unsatisfied or unbonded at the time of any request for an advance or for a period of forty-five (45) days after the date of filing thereof.

(f)     If the Borrower is unable to satisfy any condition of Borrower's right to receive advances hereunder for a period in excess of thirty (30) days.

(g)     If the Borrower fails to comply with any requirements of any Governmental Authority within thirty (30) days after notice in writing of such requirement shall have been given to the Borrower.

(h)     If Borrower should dissolve.

4.     The Lender shall have the right, upon the happening of any of the foregoing Events of Default, in addition to any rights or remedies available to it under the deed of trust securing the Loan or any other instrument securing the Loan, to enter into possession of the Land and all sums so expended by the Lender shall be deemed to have been paid to the Borrower and secured by the deed of trust securing the Loan. For this purpose, Borrower hereby constitutes and appoints the Lender as Borrower's true and lawful attorney-in-fact with full power of substitution to complete the Project in the name of the Borrower, and hereby empowers said attorney or attorneys as follows:

(a)     To use any funds of the Borrower, including any funds which may remain unadvanced hereunder, for the purpose of completing or maintaining the Improvements on the Land;

(b)     To pay, settle or compromise all existing bills and claims which or may be liens against the Land, or may be necessary or desirable for the completion of the work or the clearance of title; and

It is understood that this power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked until the Loan has been repaid to Lender in full. Said attorney-in-fact shall also have power to prosecute and defend all actions or proceedings in connection with the Land and to take such action and require such performance as is deemed necessary.

Thank you very much for your cooperation in this matter.

By: _____
Mason Au, Individually

Attest: _____
Nanjoo Au, Individually

SAMJIN GENERAL SUPPLY, INC. dba Sam Jin
Roofing Supply

By: _____

Mason Au, President

Attest: _____

Nanjoo Au, Secretary

EXHIBIT "A"

Title Order Number:

File Number:        3404-1708485

## Schedule "A"

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

*Perm Loan* [handwritten]

ADJUSTABLE RATE PROMISSORY NOTE

$1,780,000.00

Maturity Date: 9/26/2030 (the "Maturity Date")        Date: 9/26/05

1.    **Promise to Pay**  FOR VALUE RECEIVED, Mason Au and Nanioo Au and SAMJIN GENERAL SUPPLY, INC. dba Sam Jin Roofing Supply("Maker") promises to pay to the order of BLX Capital, LLC (sometimes referred to as "Lender" and also sometimes referred to herein together with all subsequent holders hereof as "Holder") at its offices at 645 Madison Avenue, 19th Floor, New York, NY 10022, or such other place as Holder may from time to time specify in writing, the sum of ONE MILLION SEVEN HUNDRED EIGHTY THOUSAND and NO/100 DOLLARS ($1,780,000.00) in legal and lawful money of the United States of America, together with interest thereon from the date of funding hereunder until maturity at the rate set out below

2    **Loan Agreement.**  This Note is entered into as part of a loan transaction between Maker and Lender evidenced by instruments of even date including without limitation, that certain Loan Agreement, Mortgage and Security Agreement, Security Agreement, Guarantee Agreement and Other Security Documents The term Other Security Documents as used in this Note shall mean all and any of the documents, other than this Note, the Mortgage and Security Agreement, Security Agreement, Guarantee Agreement(s) and Loan Agreement now or hereafter executed by Maker and/or others by or in favor of Lender, which wholly or partially secure, evidence or guarantee payment of this Note. The Loan Agreement, Mortgage and Security Agreement, Security Agreement, Guarantee(s) and Other Security Documents are collectively referred to herein as the "Loan Documents". Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Loan Documents.

3    **Interest Rate.**  THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE.  Interest shall be calculated based on a three hundred sixty (360) day year and charged for the actual number of days elapsed  This Note shall bear interest at the variable rate of *four and fifty/two one hundredths* percent ( 4.42 %) per annum (the "Spread") over the LIBOR Rate (the "Interest Rate"), adjusted monthly (the "Interest Period"). The Spread is determined on the date this Note is executed and is equal to the Prime Rate plus 1.50 %, minus the thirty (30) day LIBOR Rate. For purposes of determining the Interest Rate, the Prime Rate is established by the Wall Street Journal and the thirty (30) day LIBOR Rate is established by the British Bankers Association, each as of the business day immediately preceding the date of this Note  Thereafter, the term "LIBOR Rate" shall mean, for any interest accrual period, the highest rate per annum (rounded upwards, if necessary, to the nearest 1/100 of 1%) appearing on Telerate Page 3750 (or any successor page) as the "One Month" or "Thirty Day" London interbank offered rate for Dollars at approximately 11:00 a.m. (London Time) on the first business day of the calendar month ("Change Date") for said interest accrual period  If the rate described above does not appear on the Telerate System on any applicable interest determination date, the LIBOR rate shall be the rate (rounded upward, if necessary, to the nearest 1/100 of 1%) appearing on Reuters Screen LIBOR Page as the highest London interbank One Month or Thirty Day rate for deposits in Dollars at approximately 11:00 a.m. (London Time) on the first business day of the calendar month for said interest accrual period

a.    **Unavailability of Deposits or Inability to Ascertain Libor.**  Notwithstanding any other provision of this Note, if prior to the commencement of any Interest Period, the Lender shall determine that deposits in the amount of the Loan scheduled to be outstanding during such Interest Period are not readily available to the Lender in the relevant market or by reason of circumstances affecting the relevant market and/or adequate and reasonable means do not exist for ascertaining Libor or Adjusted Libor, then the Lender shall promptly give notice thereof to the undersigned and the obligations of the Lender to create or continue a Libor based interest rate in such amount and for such Interest Period shall terminate, and the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 1.50%; provided, however, that (i) upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate; and (ii) when deposits in such amount and for the Interest Period selected by the

1

EXHIBIT B [handwritten]

undersigned shall again be readily available in the relevant market and adequate and reasonable means exist for ascertaining Libor, the undersigned then shall, after due notice to Lender, have the option of reconverting the method of computing the interest rate on this Note into a Libor based interest rate.

           b.     <u>Taxes and Increased Costs</u> If the Lender shall determine in good faith that any change in any applicable law, treaty, regulation or guideline (including, without limitation, Regulation D of the Board of Governors of the Federal Reserve System) or any new law, treaty, regulation or guideline, or any interpretation of any of the foregoing by any governmental authority charged with the administration thereof or any central bank or other fiscal, monetary or other authority having jurisdiction over the Lender or its lending branch, or the Libor based interest rate contemplated by this Agreement (whether or not having the force of law) shall:

                (i)     impose, increase, or deem applicable any reserve, special deposit or similar requirement against assets held by, or deposits in or for the account of, or loans by, or any other acquisition of funds or disbursements by, the Lender which is not in any instance already accounted for in computing the Libor based interest rate;

                (ii)    subject the Lender, the Loan or this Note to any tax (including, without limitation, any United Stated interest equalization tax or similar tax however named applicable to the acquisition or holding of debt obligations and any interest or penalties with respect thereto), duty, charge, stamp tax, fee, deduction or withholding in respect of the Loan or this Note, except such taxes as may be measured by the overall net income or gross receipts of the Lender or its lending branches, and imposed by the jurisdiction, or any political subdivision or taxing authority thereof, in which the Lender's principal executive office or its lending branch is located;

                (iii)   change the basis of taxation of payments of principal and interest due from the undersigned to the Lender hereunder or under this Note (other than by a change in taxation of the overall net income or gross receipts of the Lender); or

                (iv)   impose on the Lender any penalty with respect to the foregoing or any other condition regarding this Note, or the disbursement of the Loan;

and the Lender shall determine that the result of any of the foregoing is to increase the cost (whether by incurring a cost or adding to a cost) to the Lender of creating or maintaining the Loan or to reduce the amount of principal or interest received or receivable by the Lender (with benefit of, or credit for, any prorations, exemption, credits or other offsets available under any such laws, treaties, regulations, guidelines or interpretations thereof), then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 1.50%; provided, <u>however</u>, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. If the Lender makes such a determination, the Lender shall provide to the undersigned a certificate setting forth the computation of the increased cost or reduced amount as a result of any event mentioned herein in reasonable detail and such certificate shall be conclusive if reasonably determined.

           c.     In the event that Holder is unable to obtain any such quotations as provided above, it will be deemed that the LIBOR Rate cannot be determined. In the event that the LIBOR Rate cannot be determined for any Interest Period, then the interest rate of this Note shall be converted into a floating rate equal to the Prime Rate, adjusted as of each change of the Prime Rate, plus 1.50%; provided, <u>however</u>, that upon the occurrence and continuance of an Event of Default, this Note shall bear interest at a rate 4% in excess of the aforesaid rate. The

2

term Prime Rate shall mean the prime rate in effect on the first business day of the calendar month for said interest accrual period as published in the Wall Street Journal on the next business day.

    4.     <u>Principal and Interest Payments</u>. This Note shall be repaid in monthly installments. One payment of interest only shall be due and payable on the date monies are advanced, for the period commencing on such date and ending on the last day of the calendar month in which the date of this Note occurs. Thereafter, this Note shall be repaid in combined monthly payments of principal and interest commencing on the first day of the second full calendar month after the date of this Note and continuing monthly and regularly thereafter on the first day of each successive calendar month until the Maturity Date unless otherwise accelerated., when the entire principal balance remaining unpaid, along with all accrued and unpaid interest, shall be due and payable in full. All payments shall be applied first to the payment of all fees, expenses and other amounts due Holder (excluding principal and interest), then to interest accrued to the date of receipt of said installment, and the balance, if any, to the principal, provided, however, that after an Event of Default, payments will be applied to such of the obligations of Make to Holder as Holder determines in its sole discretion. If and when the interest rate is adjusted each month, the remaining principal balance will be re-amortized and payments adjusted accordingly to insure the loan balance will be repaid within the remaining life of the loan.

    The Initial monthly payments of principal and interest will be in the amount of $13,738.00 until adjusted pursuant to the terms hereof. MAKER ACKNOWLEDGES AND AGREES THAT IF THE INTEREST RATE CHANGES, AS DESCRIBED HEREINABOVE, THE AMOUNT OF MONTHLY PAYMENTS WILL CHANGE. INCREASES IN THE INTEREST RATE MAY RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE MAY LOWER PAYMENTS.

    5.     <u>Change Date</u>. On each Change Date, the Holder will calculate the new interest rate. If there is a change in the interest rate, the new rate will be effective as of the first day of the calendar month in which a Change Date occurs, and the Holder will determine the amount of monthly payments sufficient to pay the balance of the principal plus accrued interest at the new interest rate in substantially equal payments by the Maturity Date.

    6.     <u>Funding Indemnity</u>. In the event Lender shall incur any loss of profit, and any loss, cost or expense (including, without limitation, any loss, cost or expense incurred by reason of the liquidation or reemployment of deposits or other funds acquired or contracted to be acquired by Lender to fund or maintain the Loan, or the relending or reinvesting of such deposits or other funds or amounts paid or prepaid to Lender) as a result of:

    a.     any payment under this Note on a date other than the last day of the then applicable Interest Period for any reason, whether before or after the occurrence of any Event of Default, and whether or not such payment is required by any provisions of this Note; or

    b     any failure by the undersigned to create, borrow, continue or effect by conversion the Loan on the date specified in a notice given pursuant to this Note;

then upon the demand of Lender, the undersigned shall pay to Lender such amount as will reimburse Lender for such loss, cost or expense. Without limitation of the foregoing, any prepayment of the Loan on a date other than the last day of the then applicable Interest Period shall be accompanied by an interest surcharge equal to the loss Lender shall suffer as a result of Libor as calculated on the date of such prepayment for the period of time equal to the Interest Period for such portion of the Loan being prepaid being less than Libor applicable to such portion being prepaid Maker recognizes that Holder would incur substantial additional costs and expenses in the event of such a prepayment of the indebtedness evidenced by this Note and that the interest surcharge compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date). If Lender requests such a reimbursement Lender shall provide the undersigned with a certificate setting forth the computation of the loss of profit and any loss, cost or expense giving rise to the request for reimbursement in reasonable detail and such certificate shall be conclusive if reasonably determined.

7      Late Charges.  Maker shall pay upon demand, a "Late Charge" equal to five percent (5%) of the amount of any payment of principal, interest or both, or any other amount due under this Note or the Loan Documents, which is not paid within ten (10) days of the due date thereof. Late Charges are: (a) payable in addition to, and not in limitation of, the Default Rate, (b) intended to compensate Holder for administrative and processing costs incident to late payments, (c) are not interest, and (d) shall not be subject to refund or rebate or credited against any other amount due.

8.      Default Rate.  Holder shall have the option of imposing, and Maker shall pay upon demand, an interest rate ("Default Rate") which is equal to four percent (4%) per annum above the interest rate otherwise payable: (a) while any monetary default exists under this Note or the Loan Documents and is continuing, during that period between the due date and the date of payment; (b) following any Event of Default until the Event of Default is either cured or waived by Holder; (c) after judgment has been rendered on this Note or under any Loan Documents and (d) after the Maturity Date.

9.      Prepayment Consideration.  Maker agrees that in the event any portion of this Note is paid in whole or in part prior to maturity, so as to constitute a "Prepayment", consideration will be tendered with the prepayment to the Holder ("Prepayment Consideration") based upon the following schedule:

> Five percent (5.0%) of the outstanding loan principal balance prepaid if prepaid during the first and second Loan Years

> Four percent (4.0%) of the outstanding loan principal balance prepaid if prepaid within the third Loan Year.

> Three percent (3.0%) of the outstanding loan principal balance prepaid if prepaid within the fourth Loan Year.

> Two percent (2.0%) of the outstanding loan principal balance prepaid if prepaid within the fifth Loan Year.

> One percent (1.0%) of the outstanding loan principal balance prepaid if prepaid within the sixth Loan Year or thereafter.

a.      It is understood and agreed that a "Prepayment" shall be any principal payment made ahead of schedule which when aggregated with all other Prepayments, exceeds five percent (5.00%) of the then outstanding principal balance of this Note. A "Loan Year" is defined as the twelve (12) month period commencing on the date of this Note or any consecutive twelve (12) month period during the term hereof. No Prepayment Consideration will be due for involuntary prepayments resulting from the proceeds of any casualty loss or condemnation

b.      . Maker acknowledges that the Prepayment Consideration is consideration to Holder for the privilege of prepaying the indebtedness evidenced by this Note prior to maturity, and Maker recognizes that Holder would incur substantial additional costs and expenses in the event of a prepayment of the indebtedness evidenced by this Note and that the Prepayment Consideration compensates Holder for such costs and expenses (including without limitation, the loss of Holder's investment opportunity during the period from the date of prepayment until the Maturity Date)    Maker agrees that Holder shall not, as a condition to receiving the Prepayment Consideration, be obligated to actually reinvest the amount prepaid in any manner whatsoever.

10.     Event of Default.  At the option of the holder, this Note and the indebtedness evidenced hereby, together with any monies agreed to be paid by Maker pursuant to this Note and the Loan Documents, shall become immediately due and payable without further notice or demand, and notwithstanding any prior waiver of any breach or default, or other indulgence, upon the occurrence at any time of any one or more of the following events, each of which shall be an "Event of Default" hereunder and under the Loan Documents:  (i) default continuing uncured beyond the applicable grace period, if any, set forth in the Loan Documents, in making any payment of interest, principal, other charges or payments due hereunder or under the Loan Documents; (ii) an Event of Default as

4

defined in or as set forth in the Loan Documents; or (iii) an event which pursuant to any express provision of the Loan Documents, gives Lender the right to accelerate the Loan

11.    No Waiver.  No delay or omission on the part of the Holder in exercising any right hereunder or any right under the Loan Documents or any instrument or agreement now or hereafter executed in connection herewith, or any agreement or instrument which is given or may be given to secure the indebtedness evidenced hereby, or any other agreement now or hereafter executed in connection herewith or therewith shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion

12    Waiver.  Maker and each and every party liable hereon or for the indebtedness evidenced hereby whether as maker, endorser, guarantor, surety or otherwise hereby:  (a) waives presentment, demand, protest, suretyship defenses and defenses in the nature thereof; (b) waives any defenses based upon and specifically assents to any and all extensions and postponements of the time for payment, changes in terms and conditions and all other indulgences and forbearances which may be granted by the holder to any party now or hereafter liable hereunder or for the indebtedness evidenced hereby; (c) agrees to any substitution, exchange, release, surrender or other delivery of any security or collateral now or hereafter held hereunder or in connection with any of the Loan Documents, and to the addition or release of any other party or person primarily or secondarily liable; (d) agrees that if any security or collateral given to secure this Note or the indebtedness evidenced hereby or to secure any of the obligations set forth or referred to any of the Loan Documents, shall be found to be unenforceable in full or to any extent, or if Lender or any other party shall fail to duly perfect or protect such collateral, the same shall not relieve or release any party liable hereon or thereon nor vitiate any other security or collateral given for any obligations evidenced hereby or thereby; (e) agrees to pay all reasonable costs and expenses incurred by Lender or any other holder of this Note in connection with the indebtedness evidenced hereby, including, without limitation, all reasonable attorneys' fees and costs, for the implementation of the Loan, the collection of the indebtedness evidenced hereby and the enforcement of rights and remedies hereunder or under the Loan Documents, whether or not suit is instituted; (f) waives the right to assert, in any action brought by Lender or Holder for payment of this Note or to enforce any obligations under this Note and/or the Loan Documents, any right of recission, set-off, counterclaim or defense with respect to payment of this Note and/or enforcement of any obligations sought to be enforced under the Loan Documents and (g) consents to all of the terms and conditions contained in this Note and the Loan Documents

13.    Usury/Stated Rate.  Maker and Lender intend to strictly comply with all applicable federal and New York laws, including applicable usury laws (or the usury laws of any jurisdiction whose usury laws are deemed to apply to the Note or any other Loan Document despite the intention and desire of the parties to apply the usury laws of the State of New York)  Accordingly, the provisions of this paragraph shall govern and control over every other provision of this Note or any other Loan Document which conflicts or is inconsistent with this Section, even if such provision declares that it controls.  As used in this paragraph, the term "interest" includes the aggregate of all charges, fees, benefits or other compensation which constitute interest under applicable law, provided that, to the maximum extent permitted by applicable law, (a) any non-principal payment shall be characterized as an expense or as compensation for something other than the use, forbearance or detention of money and not as interest, and (b) all interest at any time contracted for, reserved, charged or received shall be amortized, prorated, allocated and spread, in equal parts during the full term of the obligations.  In no event shall Maker or any other person be obligated to pay, or Holder have any right or privilege to reserve, receive or retain, (a) any interest in excess of the maximum amount of non-usurious interest permitted under the laws of the State of New York or the applicable laws (if any) of the United States or of any other state, or (b) total interest in excess of the amount which Holder could lawfully have contracted for, reserved, received, retained or charged had the interest been calculated for the full term of the obligations.  On each day, if any, that the interest rate (the "Stated Rate") called for under this Note or any other Loan Document exceeds the maximum non-usurious rate, the rate at which interest shall accrue shall automatically be fixed by operation of this sentence at the maximum non-usurious rate for that day  Thereafter, interest shall accrue at the Stated Rate unless and until the Stated Rate again exceeds the maximum non-usurious rate, in which case, the provisions of the immediately preceding sentence shall again automatically operate to limit the interest accrual rate to the maximum non-usurious rate.  The daily interest rates to be used in calculating interest at the maximum non-usurious rate shall be determined by dividing the applicable maximum non-usurious rate by the number of days in the calendar year for which such calculation is being made  None of the terms and provisions contained in this Note or in any other Loan Document which directly or indirectly relate to interest shall ever be construed without reference to this paragraph, or be construed to create a contract to pay for the use, forbearance or

detention of money at an interest rate in excess of the maximum non-usurious rate. If the term of any obligation is shortened by reason of acceleration of maturity as a result of any Default or by any other cause, or by reason of any required or permitted prepayment, and if for that (or any other) reason Holder at any time, including but not limited to, the stated maturity, is owed or receives (and/or has received) interest in excess of interest calculated at the maximum non-usurious rate, then and in any such event all of any such excess interest shall be canceled automatically as of the date of such acceleration, prepayment or other event which produces the excess, and, if such excess interest has been paid to Holder, it shall be credited pro tanto against the then-outstanding principal balance of Maker's obligations to Holder, effective as of the date or dates when the event occurs which causes it to be excess interest, until such excess is exhausted or all of such principal has been fully paid and satisfied, whichever occurs first, and any remaining balance of such excess shall be promptly refunded to its payor

14    Replacement Note.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of this Note or any Loan Document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon surrender and cancellation of such Note or other Loan Document, Maker will issue, in lieu thereof, a replacement Note or other Loan Document in the same principal amount thereof and otherwise of like tenor

15    Assignment.  Lender shall have the unrestricted right at any time or from time to time and without Maker's or Guarantor's consent, to assign all or any portion of its rights and obligations hereunder to one or more lenders or purchasers (each, an "Assignee"), and Maker and Guarantor agrees that it shall execute, or cause to be executed, such documents, including without limitation, the delivery of an estoppel certificate and such other documents as Lender shall deem necessary to effect the foregoing

16    Jurisdiction/Venue.  It is understood and agreed that this Note and all of the Loan Documents were negotiated and have been or will be delivered to Lender in the State of New York, which State the parties agree has a substantial relationship to the parties and to the underlying transactions embodied by this Note and the Loan Documents. Maker agrees to furnish to Lender at Lender's office in New York, N.Y., all further instruments, certifications and documents to be furnished hereunder.  The parties also agree that if collateral is pledged to secure the debt evidenced by this Note, that the state or states in which such collateral is located each have a substantial relationship to the parties and to the underlying transaction embodied by this Note and the Loan Documents.

17.    Governing Law.  MAKER AGREES THAT THE HOLDER OF THIS NOTE SHALL HAVE THE OPTION BY WHICH STATE LAWS THIS NOTE SHALL BE GOVERNED AND CONSTRUED: (A)  THE LAWS OF THE STATE OF NEW YORK;  OR (B) IF COLLATERAL HAS BEEN PLEDGED TO SECURE THE DEBT EVIDENCED BY THIS NOTE, THEN BY THE LAWS OF THE STATE OR STATES WHERE THE COLLATERAL IS LOCATED, AT HOLDER'S OPTION.  THIS CHOICE OF STATE LAWS IS EXCLUSIVE TO THE HOLDER OF THIS NOTE.  MAKER SHALL NOT HAVE ANY OPTION TO CHOOSE THE LAWS BY WHICH THIS NOTE SHALL BE GOVERNED.  MAKER AGREES THAT MAKER, THIS NOTE AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REGARDLESS OF THE CHOICE OF LAW MADE BY HOLDER, SHALL BE GOVERNED BY THE PROVISIONS OF THE CREDIT AGREEMENTS ACT (AS ENACTED BY AND INTERPRETED IN THE STATE OF ILLINOIS)(815 ILCS 160 ET. SEQ.)  AND AS THAT ACT MAY BE AMENDED FROM TIME TO TIME.  MAKER AND GUARANTORS HEREBY CONSENT TO THE EXERCISE OF JURISDICTION OVER IT BY ANY FEDERAL COURT SITTING IN NEW YORK OR ANY NEW YORK COURT SELECTED BY HOLDER, FOR THE PURPOSES OF ANY AND ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THE NOTE, THE LOAN AGREEMENT AND ALL OTHER LOAN DOCUMENTS.  MAKER AND GUARANTORS IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT, ANY CLAIM BASED ON THE CONSOLIDATION OF PROCEEDINGS IN SUCH COURTS IN WHICH PROPER VENUE MAY LIE IN DIVERGENT JURISDICTIONS, AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM  MAKER AND GUARANTORS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY.

18.    Holder's Right to Convey. This Note shall be binding upon Maker and its successors and assigns and shall inure to the benefit of Holder and its successors and assigns. Holder has full right and authority to sell, assign, pledge, hypothecate and transfer all or any portion of its rights and/or obligations under this Note and the Loan Documents; the Note and the Loan Documents and all information now or hereafter in its possession relating to the Maker and any or all Guarantors (all rights of privacy hereby being waived), and to retain any compensation received by Holder in connection with any such transaction

19.    Unenforceability of Process. The invalidity or unenforceability of any provision hereof or of the Loan Documents, or of any other instrument, agreement or document now or hereafter executed in connection with the loan made pursuant hereto and thereto shall not impair or vitiate any other provision of any of such instruments, agreements and documents, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

20    Notices. Any notices given with respect to this Note shall be given in the manner provided for in the Loan Documents.

21.    Extensions, Modifications and Releases. From time to time, Lender may, at its option, extend the time of payment of the outstanding principal sum, accept a renewal of this Note, modify the terms and time of payment of the outstanding principal sum or interest due, join in any extension or subordination agreement, release any security for the Note, take or release other or additional security, and agree in writing with Maker to modify the rate of interest of this Note or change the amount of the monthly payments payable under this Note, (a) without affecting the obligation of Maker to pay the outstanding principal balance of this Note and observe its covenants, (b) without affecting the guaranty of any person, corporation, partnership or other entity for payment of the outstanding principal sum, (c) without giving notice to or obtaining the consent of Maker, any guarantors or the successors or assigns of guarantors, and (d) without liability on the part of Lender.

22.    CONFESSION OF JUDGMENT. The undersigned hereby irrevocably authorizes and empowers any attorney-at-law to appear in any of any court of record and to confess judgment against the undersigned for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees of fifteen percent (15%) of the total indebtedness or Five Thousand Dollars ($5,000.00), whichever is the larger amount, plus costs of suit, and to release all errors, and waive all rights of appeal. The undersigned waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power will continue undiminished and may be exercised from time to time as lender may elect until all amounts owing on this Note have been paid in full. The undersigned hereby waives and releases any and all claims or causes of action which the undersigned might have against any attorney acting under the terms of authority which the undersigned has granted herein arising out of or connected with the confession of judgment hereunder

Executed as of the date first written above.

WITNESS:                                    MAKER:

_____                     By: _____
Name:                                       Name: Mason Au
                                            Title: Individually

                                            By: _____
                                            Name: Nanjoo Au
                                            Title: Individually

[CORPORATE SEAL]

SAMJIN GENERAL SUPPLY, INC  dba Sam Jin Roofing Supply

By: _____
Name: Mason Au
Title: President

By: _____
Name: Nanjoo Au
Title: Secretary

STATE OF _California_  )
                        )
COUNTY OF _Sacramento_  )ss:

The foregoing instrument was acknowledged before me this _23_ day of _September_, 20_03_, by _Mason Au_ and _Nanjoo Au_ _President_ + of _Samjin General Supply, Inc._ a _California_ corporation.  _Secretary, respectively,_

Witness my hand and official seal.

_____
Notary Public

My commission expires: _1-3-06_

[Notary Seal:
V. BRESSMAN
COMM. # 1337360
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3, 2006]

8

BICCC2005ᵐ865  Sam Jin Roofing Supply

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0048140-00
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd  $52.00        Nbr-0000595738
                      VRB/RS/2-13

RECORDED AT THE REQUEST OF:
1610 Arden Way
Diamond Bar, Suite 901
Sacramento, California 95815

WHEN RECORDED RETURN TO:
Joni L. Walaski, Esq.
645 Madison Avenue, 19th Floor
New York, New York 10022

## DEED OF TRUST WITH ASSIGNMENT OF RENTS

This DEED OF TRUST, made as of _September 23_ __, 2005, by and between
MASON AU AND NANJOO AU, HUSBAND AND WIFE, herein called TRUSTOR,
whose address is 3600 West Capital Avenue, Sacramento, California 95691,
FIRST AMERICAN TITLE COMPANY, a California corporation, having
an address at 1610 Arden Way, Diamond Bar, Suite 901, Sacramento, California 95815-
herein called TRUSTEE, and BLX CAPITAL, LLC, a Delaware limited liability
company, whose address is Independence Corporate Park, One Independence Pointe,
Suite 102, Greenville, South Carolina 29615, herein called BENEFICIARY.

WITNESSETH: TRUSTOR hereby irrevocably grants, transfers and
assigns to TRUSTEE in Trust with POWER OF SALE, WITH RIGHT TO ENTRY
AND POSSESSION, that real property situate in the City of West Sacramento,
County of Yolo, State of California more particularly described in Schedule "A"
attached hereto (the "Property").

TOGETHER WITH all the rights, privileges, title and interest which Trustor now
has or may hereafter acquire in or to the Property including, but not limited to, the rents,
issues and profits thereof, and together with all appurtenances, buildings and
improvements now or hereafter placed thereon, it being understood and agreed that all
classes of property attached or unattached, used in connection therewith shall be deemed
fixtures and subject to the Property; TOGETHER WITH all the rights, privileges, title
and interest which Trustor now has or may hereafter acquire in or to the Property
including, but not limited to, the rents, issues and profits thereof, and together with all
appurtenances, buildings and improvements now or hereafter placed thereon, it being
understood and agreed that all classes of property attached or unattached, used in
connection therewith shall be deemed fixtures and subject to the Property; SUBJECT,
HOWEVER, to the right, power and authority hereinafter given to and conferred upon
Beneficiary to collect and apply such rents, issues and profits, FOR THE PURPOSES
OF SECURING (1) the Trustor's obligations under that certain Note in the principal

EXHIBIT                     1                 048140 SEP 27 '05

sum of ONE MILLION SEVEN HUNDRED EIGHTY THOUSAND and 00/100 ($1,780,000.00) Dollars of even date herewith executed by Trustor to order of Beneficiary, and including extensions or renewals thereof, and (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of any and all additional sums, and interest thereon which may hereafter be loaned to TRUSTOR, its successors or assigns, when such additional sums are evidenced by a promissory note or notes, stating that they are secured by this Deed of Trust, and all modifications, amendments, extensions and renewals thereof.

IN THE EVENT TRUSTOR SHALL SELL, TRANSFER, CONVEY, AGREE TO SELL, OR OTHERWISE BECOME DIVESTED OF TITLE TO THE PROPERTY, OR ANY PORTION THEREOF, WHETHER VOLUNTARY, INVOLUNTARY OR BY OPERATION OF LAW WITHOUT PRIOR WRITTEN CONSENT OF BENEFICIARY IRRESPECTIVE OF THE MATURITY DATE HEREOF AND WITHOUT DEMAND OR NOTICE, ALL SUMS SECURED HEREBY, INCLUDING PREPAYMENT CHARGES, IF ANY, SHALL AT THE OPTION OF BENEFICIARY, BECOME IMMEDIATELY DUE AND PAYABLE.

A.     To protect the security of this Deed of Trust, Trustor agrees:

(1)     To keep the Property in good condition and repair; not to remove or demolish any building therein; to complete or restore promptly and in good workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or sue of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)     To provide, maintain and deliver to Beneficiary fire and/or casualty insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied to Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of the Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any action done pursuant to such notice.

(3)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

(4)     To pay: at least ten days before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all

048140 SEP 27 '8

encumbrances, charges and liens, with interest, on the Property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this trust.

Should Trustor fail to make any payments or do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees and expenses.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the same rate as provided in the Note, or notes, or guaranty pertaining hereto, secured hereby, or at the rate of ten percent per annum, whichever is greater, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby in an amount not to exceed the maximum allowed by law at the time when said statement is issued.

(6)    To waive the pleading of the Statute of Limitations as a defense to any and all indebtedness and/or obligations secured by this Trust to the fullest extent permissible by law.

B.    It is mutually agreed:

(1)    That any award of damages in connection with any condemnation for public use of, or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to pay.

(3)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Guaranty for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of a map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

3

048140 SEP 27 9

3

(4)    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Guaranty to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)    That as additional security, Trustor absolutely and unconditionally assigns, transfers and sets over to Beneficiary all of its right, title, and interest in and to all rents, royalties, issues, profits, revenue, income, and other benefits of the Property arising from the use and enjoyment of all or any portion thereof, and its right, title and interest under or by virtue of any and all leases and occupancy agreements relating to the Property now existing or hereafter executed, together with all extensions, renewals, modifications or replacements thereof, and any and all guarantees of the lessee's obligations under any provisions thereof and under any and all extensions and renewals thereof (any such lease or leases being hereinafter referred to individually and collectively as "Leases"). With respect to the foregoing:

a.    Beneficiary grants to Trustor a license to collect, subject to the provisions herein, such rents, royalties, issues, profits, revenue, income and other benefits (herein "Rents and Profits") accruing by virtue of the Leases or otherwise from the Property as they respectively become due, but not in advance, and to enforce the agreements of the Leases, so long as there is no Event of Default by Trustor;

b.    Upon any Event of Default by Trustor hereunder, Beneficiary may, in its absolute discretion, at any time and without notice (either in person, by agent or representative, or by a receiver appointed by a court) and without regard to the adequacy of any security for the indebtedness secured by this Deed of Trust: (i) enter upon and take possession of the Property or any part thereof, in its own name or in the name of Trustor (provided, however, such entering upon and/or taking possession of the Property shall not be a condition precedent or limitation of Beneficiary's right to collect the Rents and Profits); (ii) sue for or otherwise collect the Rents and Profits (including those past due and unpaid) and apply such Rents and Profits (less costs and expenses of collection, including attorneys' fees and expenses, and costs of upkeep, maintenance, repair and/or operation of the Premises) to the payment of such indebtedness secured under this Deed of Trust in such order and in proportions as Beneficiary in its absolute discretion may determine; (iii) take all steps which may be desirable in Beneficiary's judgment to complete any unfinished construction, and to operate and manage the Property; and/or (iv) perform such other reasonable acts or repairs or protections as may be reasonably necessary or proper in Beneficiary's sole judgment to conserve the value thereof. The entering upon and taking of possession of the Property and/or the collection and application of the Rents and Profits shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice;

4

0 4 8 1 4 0  SEP 27 '09

4

c.    Notwithstanding the right to collect the Rents and Profits, Trustor agrees that Beneficiary, and not Trustor, shall be and be deemed to be the creditor of each Lessee in respect of assignments for the benefit of creditors and bankruptcy, arrangement, reorganization, insolvency, dissolution or receivership proceedings affecting such Lessee (without obligation on the part of Beneficiary, however, to file or make timely filings of claims in such proceedings or otherwise to pursue creditor's rights therein), with an option to Beneficiary to apply in its sole discretion any money received by Beneficiary as such creditor in reduction of the obligations or any other indebtedness secured by or to be paid under this Deed of Trust, whether or not same is then due and payable;

d.    Trustor irrevocably consents that the tenant(s) under the Leases, upon demand and notice from Beneficiary to such tenant(s) of Trustor's Event of Default hereunder, shall pay all Rents and Profits under the Leases to Beneficiary without liability of the tenant(s) for the determination of the actual existence of any default claimed by Beneficiary. Trustor hereby irrevocably authorizes and directs the tenant(s), upon receipt of any notice of Beneficiary stating that an Event of Default exists under or in the performance of any of the terms, covenants, or conditions of this Deed of Trust, to pay to Beneficiary the Rents and Profits due and to become due under the Leases. Trustor agrees that the tenant(s) shall have the right to rely upon any such notices of Beneficiary that tenant(s) shall pay such Rents and Profits to Beneficiary, without any obligation or without any right to inquire as to whether such default actually exists and notwithstanding any claim of or notice by Trustor to the contrary. Trustor shall have no claim against tenant(s) for any Rents and Profits paid by such tenant(s) to Beneficiary;

e.    Beneficiary shall have the right to assign Trustor's right, title and interest in the Leases to any subsequent holder of this Deed of Trust and to any person acquiring title to the mortgaged property through foreclosure or otherwise. After Trustor shall have been barred and foreclosed of all right, title, interest, and equity of redemption in the leased premises, no assignee of Trustor's interest in the Leases shall be liable to account to Trustor for the Rents and Profits thereafter accruing;

f.    Trustor agrees to indemnify and hold Beneficiary harmless from and against any and all liability, loss, or damage which Beneficiary may incur under the Leases or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Beneficiary by reason of any alleged obligation or undertaking to be performed or discharged by Beneficiary under the Leases, or this Deed of Trust after taking title to the Property. Nothing herein contained shall be construed to bind Beneficiary to the performance of any of the terms or provisions contained in the Leases, or otherwise to impose any obligation on Beneficiary whatsoever. Prior to actual entry and taking possession of the Property by Beneficiary, this assignment shall not operate to make Beneficiary a "mortgagee-in-possession" or to place any responsibility for the control, care, management, or repair of the Property upon Beneficiary or for the carrying out of any of the terms or provisions of the Leases. Should Beneficiary incur any liability by reason of actual entry and taking possession or for any other reason or occurrence relating thereto, or sustain loss or damage under the Leases or under or by reason of this assignment or in the defense of any such claims or

5

048140 SEP 27 ...

demands, Trustor shall immediately upon demand reimburse Beneficiary for the amount thereof, together with all costs and expenses and reasonable attorneys' fees incurred by Beneficiary, all of the foregoing to bear interest until paid at the rate of interest then payable under the Note, and Beneficiary may retain possession and collect the Rents and Profits and, from time to time, apply them in or toward satisfaction of or reimbursement for said liability, loss or damage;

        g.     Trustor shall duly perform and discharge each covenant, condition and obligation of Lessor under the Leases. Trustor will give prompt written notice to Beneficiary of any notice of Lessee's default under the Leases forwarded to tenant or any other person, and any notice of Lessor's default received from said tenant or from any other person, and furnish the Beneficiary with complete copies of such notices. If requested by Beneficiary, Trustor will enforce the Leases and all remedies available to Trustor thereunder in the event of default; and

        The Leases shall remain in full force and effect irrespective of any merger of the interest of the Lessor and Lessee thereunder. Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of all Leases, and Rents and Profits, as Beneficiary shall require.

        (6)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of a written declaration of default and demand for sale and of a written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, said Note, said Guaranty and all documents evidencing expenditures secured hereby.

        After the lapse of time as may than be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee without demand on Trustor, shall sell the Property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine at public auction to the highest bidder for cash in lawful money of the United States, as set forth in the notice of sale, payable at the time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding announcement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee or Beneficiary as hereinafter defined, may purchase at such sale.

        After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued

6

048140 SEP 27 '93

interest at the amount provided for herein; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)    Beneficiary may: (i) release any person liable for the payment of any such indebtedness or for the performance of any such obligation; (ii) extend the time or otherwise extend the terms of payment of any such indebtedness and/or make compositions or other arrangements with any debtor in relation thereto; (iii) accept additional security therefor of any kind, including deeds of trust and mortgages; (iv) alter, substitute and/or release any portion of the Premises securing such indebtedness; and/or (v) grant such other indulgences as Beneficiary may determine in its sole discretion;

(8)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or action hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book, page and/or instrument number where this Deed of Trust is recorded and the name and address of the new Trustee.

(9)    <u>Environmental Matters</u>.

a.    <u>Definitions</u>. The following definitions apply to the provisions of this paragraph:

(1)    The terms "Responsible Person" shall mean Trustor, and any other person who owns or acquires any interest in any part of the Property so long as Trustor continues to own the Property, including but not limited to any tenants, easement holders, licensees and other persons using or occupying the Property or any portion thereof and all persons in transit across any part of the Property.

(2)    The term "Applicable Law" shall include, but shall not be limited to, each statute named or referred to in (3) below, and all rules and regulations thereunder, and any other local, state and/or federal laws, rules, regulations and ordinances, whether currently in existence or hereafter enacted, which govern, to the extent applicable to the Property,

(i) the existence, cleanup and/or remedy of contamination on property;

(ii) the protection of the environment from soil, air or water pollution, or from spilled, deposited or otherwise emplaced contamination;

7

048140 SEP 27 '05

(iii)  the emission or discharge of hazardous substances into the environment;

(iv)  the control of hazardous wastes; or

(v)  the use, generation, transport, treatment, removal or recovery of hazardous substances.

(3)  The term "Hazardous Substance" shall mean (a) any oil, flammable substance, explosives, radioactive materials, hazardous wastes or substances, toxic wastes or substances or any other wastes, materials or pollutants which (i) pose a hazard to the Property or to persons on or about the Property or (ii) cause the Property to be in violation of any Applicable Law; (b) asbestos in any form which is or could become friable, urea formaldehyde foam insulation, transformers or other equipment which contain dielectric fluid containing levels of polychlorinated biphenyls, or radon gas; (c) any chemical, material or substance defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous waste," "restricted hazardous waste," or "toxic substances" or words of similar import under any Applicable Law including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 USC §§ 9601 et seq.; the Resource Conservation and Recovery Act ("RCRA"), 42 USC §§ 6901 et seq.; the Hazardous Materials Transportation Act, 49 USC §§ 1801 et seq.; the Federal Water Pollution Control Act, 33 USC §§ 1251 et seq.; the California Hazardous Waste Control Law ("HWCL"), Cal. Health & Safety §§ 25100 et seq.; the Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Act"), Cal. Water Code §§ 13000 et seq.; the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65); and Title 22 of the California Code of Regulations, Division 4, Chapter 30; (d) any other chemical, material or substance, exposure to which is prohibited, limited or regulated by any governmental authority or agency or may or could pose a hazard to the health and safety of the occupants of the Property or the owners and/or occupants of property adjacent to or surrounding the Property, or any other person coming upon the Property or adjacent property; and (e) any other chemical, materials or substance which may or could pose a hazard to the environment.

b.  Covenants and Representations.

(1)  Trustor represents and warrants that there have not been during the period of Trustor's ownership and, to the best of Trustor's knowledge, information and belief after reasonable inquiry, there have not been at any other times, any activities on the Property involving, directly or indirectly, the use, generation, treatment, storage or disposal of any Hazardous Substances in violation of Applicable Law (a) under, on or in the land included in the Property, whether contained in soil, tanks, sumps, ponds, lagoons, barrels, cans or other containments, structures or equipment, (b) incorporated in the buildings, structures or improvements included in the Property, including any building material containing asbestos, or (c) used in connection with any operations on or in the Property.

0481.40 SEP 27 8

(2)     Neither Trustor nor any other Responsible Person shall allow any Hazardous Substances to be brought onto, installed, used, stored, treated or disposed or transported over the Property in violation of Applicable Law. Without limiting the generality of the foregoing, neither Trustor nor any Responsible Person shall install, use or permit to be installed or used any product or substance containing asbestos, urea formaldehyde foam insulation or polychlorobiphenyls (pcb's) on the Property in violation of Applicable Law. Upon receipt of a request to take any actions described in this paragraph (b) Beneficiary may, at its sole option, assert, withhold, consent, or condition its consent upon the provisions by Trustor of insurance adequate in the reasonable discretion of Beneficiary to cover fully and protect the Beneficiary's interest under this Deed of Trust.

(3)     Trustor represents that, except as expressly disclosed in writing in any environmental assessment report delivered by Trustor to Beneficiary, all activities and conditions on the Property are currently in compliance with Applicable Law. So long as Trustor shall own the Property, Trustor covenants and agrees that all activities on the Property, whether conducted by any Responsible Person or by any other person, shall at all times comply with Applicable Law.

(4)     Within ten (10) days after receipt or completion of any report, citation, order, manifest or other written or oral communication from any local, state or federal agency or authority empowered to enforce, investigate or oversee compliance with Applicable Law, which materially concerns the Property, any condition thereon, or the activities of any person on or near the Property, or, in any event, after an Event of Default, Trustor shall notify Beneficiary in writing of the contents of such communication, and shall provide Beneficiary with a copy of all relevant documents.

(5)     Notwithstanding any other provision of this Deed of Trust, upon discovery of any Hazardous Substance on or in the Property in violation of Applicable Law, including, without limitation, substances that have leached onto the Property from neighboring property, substances that were deposited prior to Trustor's ownership of the Property, and all substances spilled, discharged or otherwise emitted or deposited onto the Property during Trustor's ownership, Trustor shall immediately notify Beneficiary thereof. Trustor shall immediately take all actions necessary to comply with laws requiring notification of government agencies concerning such Hazardous Substance and to remedy or correct the violation. Trustor shall handle and dispose of such substances in accordance with Applicable Law. Trustor shall take any and all actions, including institution of legal action against third parties, necessary to obtain reimbursement or compensation from such persons as were responsible for the presence of any Hazardous Substance on the Property or otherwise obligated by law to bear the cost of such remedy. Beneficiary shall be subrogated to Trustor's rights in all such claims.

(6)     Trustor shall be solely responsible for and agrees to indemnify Beneficiary, protect and defend with counsel acceptable to Beneficiary, and hold Beneficiary harmless from and against any claims (including without limitation third party claims for personal injury or real or personal property damage), actions, administrative proceedings (including informal proceedings), judgments, damages,

9

048140 SEP 27 09

9

punitive damages, penalties, fines, costs, liabilities (including sums paid in settlements of claims), interest or losses, attorneys' fees (including any fees and expenses incurred in enforcing this indemnity), consultant fees, and expert fees that arise directly or indirectly from or in connection with the presence, suspected presence, release or suspected release of any Hazardous Substance in, or from the Property, whether into the air, soil, surface water or groundwater at the Property, or any other violation of Applicable Law, or any breach of the foregoing representations and covenants; however, Trustor shall not be obligated to defend, indemnify or hold Beneficiary harmless with respect to any matter to the extent it arises from the gross negligence or willful misconduct of Beneficiary. The provisions of this subparagraph (6) shall survive the termination and reconveyance of this Deed of Trust.

        c.    <u>Right of Entry</u>. In addition to all rights of entry contained in this Deed of Trust, Beneficiary shall have the right, upon reasonable notice to Trustor, to enter and inspect the condition of the Property at any time and to conduct, or to designate a representative to conduct such inspection, testing, environmental audit or other procedures that Beneficiary reasonably believes are necessary or desirable to determine current compliance with the covenants and representations contained herein.

        d.    <u>Beneficiary's Obligations</u>. Nothing contained in this paragraph shall obligate Beneficiary to take any action with respect to the Property, any Hazardous Substances thereon, or any condition or activity that is in violation of Applicable Law, or to take any action against any person with respect to such substances, condition or activity.

      (10)    That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the Guaranty secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context requires the masculine gender includes the feminine and /or neuter, and the singular number includes the plural.

      (11)    That the Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trust, Beneficiary or Trustee shall be a party unless brought by Trustee.

      (12)    This Deed of Trust is to be construed, enforced and governed according to and by the Laws of the State of New York.

048140 SEP 27 '09

TRUSTOR HEREBY REQUESTS A COPY OF ANY NOTICE OF DEFAULT
AND ANY NOTICE OF SALE HEREUNDER BE MALED TO TRUSTOR AT HIS
ADDRESS HEREINBEFORE SET FORTH OR AT SUCH ADDRESS AS
TRUSTOR MAY FROM TIME TO TIME NOTIFY TRUSTEE BY CERTIFIED
UNITED STATES MAIL.

_____
Mason Au

_____
Nanjoo Au

11

048140 SEP 27 B

STATE OF CALIFORNIA                          )
                                             ) ss.
COUNTY OF *Sacramento*                       )

On *September 23*, 2005____, before me, *V Bressman*_____
         Date                                    Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared *Mason Au and Nanioo Au*_____
                                             Name of Signer(s)

☒ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to
me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

> V. BRESSMAN
> COMM. # 1337369
> NOTARY PUBLIC-CALIFORNIA
> ALAMEDA COUNTY
> COMM. EXP. JAN. 3, 2006

_____
Signature of Notary Public


STATE OF CALIFORNIA                          )
                                             ) ss.
COUNTY OF _____                    )

On _____, 2005____, before me, _____
         Date                                    Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _____
                                             Name of Signer(s)

☒ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to
me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public


12

048140 SEP 27 ☒

12

Title Order Number:

File Number:       3404-1708485

## Schedule "A"

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89º 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0º 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0º 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85º 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89º 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
The Law Office of Joni L Walaski
Attn: Joni L Walaski, Esq
645 Madison Avenue, 19th Floor
New York, New York 10022

YOLO Recorder's Office
Freddie Oakley, County Recorder
**DOC- 2005-0048141-00**
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd $46.00        Nbr-0000595739
                        VRB/R6/1-14

_____
Space Above This Line for Recorder's Use Only

A.P.N.: 008-030-13-1                                    File No.: 3404-1708485 (VB)

## Assignment of Leases and Rents
Document Title



EXHIBIT D

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

048141   SEP 27



MASON AU AND NANJOO AU as assignor
(Borrower)

to

BLX CAPITAL, LLC, as assignee
(Lender)

ASSIGNMENT OF LEASES AND RENTS

Dated:    September 23 , 2005

Location:   3600 West Capital Avenue
            Sacramento, California 95691

Parcel ID Number:     APN 008-030-13

County:   Yolo

PREPARED BY AND UPON RECORDATION
RETURN TO:

The Law Office of Joni L. Walaski
645 Madison Avenue, 19th Floor
New York, New York 10022
Attention:  Joni L. Walaski, Esq.

NY01/RYANJ/823565.4                                048141  SEP 27 05

2

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of the
_____ day of September 23 ____, 2005, by MASON AU AND NANJOO AU, as assignor,
having its principal place of business at 3600 West Capital Avenue, Sacramento, California 95691
06489 ("Borrower") to BLX Capital, LLC, as assignee, having an address at Independence
Corporate Park, One Independence Pointe, Suite 102, Greenville, South Carolina 29615 ("Lender").

RECITALS:

Borrower by its promissory note of even date herewith given to Lender is indebted to
Lender in the principal sum of One Million Seven Hundred Eighty Thousand and 00/100 Dollars
($1,780,000.00) in lawful money of the United States of America (together with all extensions,
renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the
date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with
the terms and conditions provided in the Note.

Borrower desires to secure the payment of the Debt (defined below) and the
performance of all its obligations under the Note and Security Instrument (defined below).

ARTICLE 1 - ASSIGNMENT

Section 1.1 PROPERTY ASSIGNED. Borrower hereby absolutely and
unconditionally assigns and grants to Lender the following property, rights, interests and estates,
now owned, or hereafter acquired by Borrower:

(a) Leases. All existing and future leases affecting the use, enjoyment, or occupancy
of all or any part of that certain lot or piece of land, more particularly described in Schedule A
annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions,
enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter
located thereon (collectively, the "Property") and the right, title and interest of Borrower, its
successors and assigns, therein and thereunder.

(b) Other Leases and Agreements. All other leases and other agreements, whether
or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof
now or hereafter made, together with any extension, renewal or replacement of the same, this
Assignment of other present and future leases and present and future agreements being effective
without further or supplemental assignment. The leases described in Subsection 1.1(a) and the
leases and other agreements described in this Subsection 1.1(b), together with all other present and
future leases and present and future agreements and any extension or renewal of the same are
collectively referred to as the "Leases".

(c) Rents. All rents, additional rents, revenues, income, issues and profits arising
from the Leases and renewals and replacements thereof and any cash or security deposited in
connection therewith and together with all rents, revenues, income, issues and profits (including all

2          048141 SEP 27 '05

oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property (collectively, the "Rents").

(d) Bankruptcy Claims. All of Borrower's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, 11 U.S.C. § 101 et seq., as the same may be amended (the "Bankruptcy Code").

(e) Lease Guaranties. All of Borrower's right, title and interest in and to claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Borrower (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(f) Proceeds. All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(g) Other. All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation, the immediate and continuing right to make claims for, receive, collect and receipt for, all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(h) Entry. The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

(i) Power of Attorney. Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(j) Other Rights and Agreements. Any and all other rights of Borrower in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Section 1.2 CONSIDERATION. This Assignment is made in consideration of that certain loan made by Lender to Borrower evidenced by the Note and secured by that certain mortgage and security agreement, deed of trust and security agreement, deed to secure debt and security agreement or similar real estate security instrument given by Borrower to or for the benefit of Lender, dated the date hereof, in the principal amount of the Note, covering the Property and intended to be duly recorded (the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (defined below) are collectively referred to as the "Debt". The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender which wholly or partially secure or guarantee payment of the Debt are referred to herein as the "Other Security Documents".

048141  SEP 27 ᴵᴷ

4

## ARTICLE 2 - TERMS OF ASSIGNMENT

Section 2.1  PRESENT ASSIGNMENT AND LICENSE BACK.  It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Borrower a revocable license to collect and receive the Rents and other sums due under the Lease Guaranties. Borrower shall hold the Rents and all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

Section 2.2  NOTICE TO LESSEES.  Borrower hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of the Security Instrument and that a Default (defined below) exists, and to continue so to do until otherwise notified by Lender.

Section 2.3  INCORPORATION BY REFERENCE.  All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Agreement to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - REMEDIES

Section 3.1  REMEDIES OF LENDER.  Upon or at any time after the occurrence of a default under this Assignment beyond applicable notice and cure periods or an Event of Default (as defined in the Security Instrument) (a "Default"), the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property.  In addition, Lender may, at its option, without waiving such Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender and may apply the Rents and sums received pursuant to any Lease Guaranties to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding:  (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of

048141  SEP 27 09      5

operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of a Default, Lender at its option, may (1) complete any construction on the Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Borrower, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease Guaranties, (3) either require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (4) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

Section 3.2  OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

Section 3.3  OTHER SECURITY. Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

Section 3.4  NON-WAIVER. The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and sums due under the Lease Guaranties and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Agreement. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions

hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

Section 3.5  BANKRUPTCY.  (a) Upon or at any time after the occurrence of a Default beyond applicable notice and cure periods, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b) If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

## ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

Section 4.1  NO LIABILITY OF LENDER.  This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after a Default or from any other act or omission of Lender in managing the Property after a Default unless such loss is caused by the willful misconduct and bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its

048141  SEP 27 '09

part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the Other Security Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2  NO MORTGAGEE IN POSSESSION. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

Section 4.3  FURTHER ASSURANCES. Borrower will, at the cost of Borrower, and without expense to Lender, do execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

ARTICLE 5 - SECONDARY MARKET

Section 5.1  TRANSFER OF LOAN. Lender may, at any time, sell, transfer or assign the Note, the Security Instrument, this Assignment and the Other Security Documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Lender may forward to each purchaser, transferee, assignee, servicer, participant or investor in such Securities or any credit rating agency rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which Lender now has or may hereafter acquire relating to the Debt and to Borrower and the Property, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable. Borrower agrees to cooperate with Lender in connection with any transfer made or any Securities created pursuant to this Section, including, without limitation, the delivery

of an estoppel certificate required in accordance with Subsection 7.4(c) of the Security Instrument and such other documents as may be reasonably requested by Lender. Borrower shall also furnish and Borrower consents to Lender furnishing to such Investors or such prospective Investors any and all information concerning the Property, the Leases, the financial condition of Borrower as may be requested by Lender, any Investor or any prospective Investors or credit rating agency in connection with any sale, transfer or participation interest. Lender may retain or assign responsibility for servicing the Note, this Assignment, the Security Instrument and the Other Security Documents or may delegate some or all of such responsibility and/or obligations to a servicer including, but not limited to, any servicer or master servicer. Lender may make such assignment or delegation on behalf of the Investors if the Note is sold or this Assignment, the Security Instrument or the Other Security Documents are assigned. All references to Lender herein shall refer to and include any such servicer to the extent applicable.

## ARTICLE 6 - MISCELLANEOUS PROVISIONS

Section 6.1  CONFLICT OF TERMS.  In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

Section 6.2  NO ORAL CHANGE.  This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 6.3  CERTAIN DEFINITIONS.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, limited liability corporation, partnership, limited liability partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 6.4  AUTHORITY.  Borrower represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this

Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

Section 6.5  INAPPLICABLE PROVISIONS.  If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 6.6  DUPLICATE ORIGINALS; COUNTERPARTS.  This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.  This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment.  The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.  Assignor hereby acknowledges receipt of a true and complete copy of this Assignment.

Section 6.7  CHOICE OF LAW.  THIS ASSIGNMENT SHALL BE DEEMED TO BE A CONTRACT ENTERED INTO PURSUANT TO THE LAWS OF THE STATE OF NEW YORK AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, PROVIDED, HOWEVER, THAT WITH RESPECT TO THE CREATION, PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIEN OF THIS ASSIGNMENT, THE LAWS OF THE STATE WHERE THE PROPERTY IS LOCATED SHALL APPLY.

Section 6.8  TERMINATION OF ASSIGNMENT.  Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become and be void and of no effect.

Section 6.9  NOTICES.  All notices or other written communications to Borrower or Lender hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day (hereinafter defined) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to Borrower or Lender at their addresses set forth in the Security Instrument or addressed as such party may from time to time designate by written notice to the other parties.  For purposes of this Assignment, the term "Business Day" shall mean any day other than Saturday, Sunday or any other day on which banks are required or authorized to close in New York, New York.  Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

SECTION 6.10  WAIVER OF TRIAL BY JURY.  BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR

OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 6.11  LIABILITY.  If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 6.12  HEADINGS, ETC.  The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 6.13  NUMBER AND GENDER.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa

Section 6.14  SOLE DISCRETION OF LENDER.  Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

Section 6.15  COSTS AND EXPENSES OF BORROWER.  Wherever pursuant to this Assignment it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender, whether retained firms, the reimbursement of the expenses for in-house staff or otherwise.

## ARTICLE 7 - DEFINITIONS

The terms set forth below are defined in the following Sections of this Assignment:

(a)   Assignment:  Preamble;

(b)   Attorneys' Fees:  Article 6, Section 6.3;

(c)   Bankruptcy Claims:  Article 1, Subsection 1.1(d);

(d)   Bankruptcy Code:  Article 1, Subsection 1.1(d);

(e)   Borrower:  Preamble and Article 6, Section 6.3;

(f)   Business Day:  Article 6, Section 6.9;

(g)   Counsel Fees:  Article 6, Section 6.3;

048141 SEP 27 99

(h)     Debt:  Article 6, Section 6.3;

(i)     Default:  Article 3, Section 3.1;

(j)     Investor:  Article 5, Section 5.1;

(k)     Lease Guaranties:  Article 1, Subsection 1.1(e);

(l)     Lease Guarantor:  Article 1, Subsection 1.1(e);

(m)    Lease Guaranty:  Article 1, Subsection 1.1(e);

(n)     Leases:  Article 1, Subsection 1.1(b);

(o)     Lender:  Preamble and Article 6, Section 6.3;

(p)     Note:  Recitals and Article 6, Section 6.3;

(q)     Other Security Documents:  Article 1, Section 1.2;

(r)     Person:  Article 6, Section 6.3;

(s)     Property:  Article 1, Subsection 1.1(a) and Article 6, Section 6.3;

(t)     Rents:  Article 1, Subsection 1.1(c); and

(u)     Security Instrument:  Article 1, Section 1.2.

THIS ASSIGNMENT, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the Security Instrument and shall be binding upon Borrower, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

IN WITNESS WHEREOF, Borrower has executed this instrument the day and year first above written.

_____
Mason Au

_____
Nanjoo Au

048141  SEP 27 '09

12.

Order No.
Escrow No.
Loan No. PCL 905-607-4005

WHEN RECORDED MAIL TO:

Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Ste. 111
Citrus Heights, CA 95610

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0048145-00
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd $28.00          Nbr-0000595743
                              VRB/R6/2-5

SPACE ABOVE THIS LINE FOR RECORDERS USE

This Deed of Trust, Third and subordinate to Second Deed of Trust for $600,000 subordinate to Deed of Trust for $1,780,000

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
(This Deed of Trust contains an acceleration clause)

This DEED OF TRUST, made September 14, 2005, between Mason Au and Nanjoo Au, herein called TRUSTOR, whose address is 3600 West Capitol Avenue, West Sacramento, CA 95691, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and EDF RESOURCE CAPITAL, INC., herein called BENEFICIARY,

WITNESSETH: That Trustor does hereby give, grant, bargain, sell, warrant, convey, mortgage, transfer, grant a security interest in, set over, deliver, confirm and convey unto Trustee, in Trust, with Power of Sale and right of entry upon the terms and conditions of this Deed of Trust that property in the County of Yolo, State of California, as described in Exhibit A incorporated herein by reference, together with all buildings, structures, facilities and other improvements now or hereafter located on the property, and all building material, building equipment, supplies and fixtures of every kind and nature now or hereafter located on the property or attached to, contained in or used in connection with any such buildings, structures, facilities or other improvements, and all appurtenances and additions thereto and betterments, renewals, substitutions and replacements thereof, and the rents, issues and profits of all of the foregoing, owned by Trustor or in which Trustor has or shall acquire an interest, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $619,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

If the Trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Orange County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 36 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964 Page 149774 | | | | |

1073

048145  SEP 27 '05

EXHIBIT E

iption: Yolo,CA Document-Year.DocID 2005.48145 Page: 1 of 5
: 3 Comment:

DEED OF TRUST                                                          PAGE 2
(Continued)

Shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said Subdivision A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a)   When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)   CDC or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

TRUSTOR:

_____
Mason Au

_____
Nanjoo Au

STATE OF CALIFORNIA                              )ss.
COUNTY OF Sacramento )
On _October 23_, 2005 before me, _V Bressman_
personally appeared _Mason Au + Nanjoo Au_                personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

V. BRESSMAN
COMM. # 1357360
NOTARY PUBLIC CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3 2006

(Seal)

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET; AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

048145 SEP 27 8

ption: Yolo,CA Document-Year.DocID 2005.48145 Page: 3 of 5
3 Comment:

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A.  To protect the security of this Deed of Trust, Trustor agrees:

(1)      To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)      To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)      To pay  at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, when due  all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof  may  make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.  It is mutually agreed:

(1)      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby Trustee may  reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)      That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The Grantee in such reconveyance may be described as Athe person or persons legally entitled thereto@.

(5)      That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby, or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)      That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as whole or separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

10737

048145 SEP 27 19

iption: Yolo,CA Document-Year.DocID 2005.48145 Page: 4 of 5
 3 Comment:

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.   Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder the book and page where this Deed is recorded and the name and address of the new Trustee

(8)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.   The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein   in this Deed, whenever the context so requires   the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.   Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

---

### REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

TO _____ Trustee

The undersigned is the legal owner and holder of the note or notes, and all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same

Dated: _____

Please mail Deed of Trust,
Note and Reconveyance to

048145 SEP 27 ℞

**END OF DOCUMENT**

5

ption: Yolo,CA Document-Year.DocID 2005.48145 Page: 5 of 5
3 Comment:

Order No.
Escrow No.
Loan No.  PCL 905-607-4005

WHEN RECORDED MAIL TO:

**Amy** Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Ave., Ste. 111
Citrus Heights  CA  95610

YOLO Recorder's Office
Freddie Oakley, County Recorder
**DOC- 2005-0048146-00**
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd   $12.00          Nbr-0000595744
                                    VRB/R6/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to: the U.S. Small Business Administration

all beneficial interest under that certain Deed of Trust dated  September 14, 2005
executed by  **Mason Au and Kamjoo Au**

. Trustor,

to First American Title Insurance Company, a California corporation

. Trustee

and recorded  concurrently  herewith as document No. **2005-48145** , in Book           . Page
of Official Records in the office of the County Recorder of    **Yolo**                  , County, California, describing
land therein as:

Attached Exhibit 'A' incorporated herein by reference

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights
accrued or to accrue under said Deed of Trust.

Dated  September 14, 2005

STATE OF CALIFORNIA        }ss.
COUNTY OF SACRAMENTO       }

On _September 14, 2005_ before
me, _the undersigned_
personally appeared _Frank F. Dinsmore_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _Amy L Pietrucha_

EDF RESOURCE CAPITAL, INC.

By _____
    Frank F. Dinsmore, Chief Executive Officer

AMY L. PIETRUCHA
Commission # 1529966
Notary Public - California
Sacramento County
My Comm. Expires Nov 26, 2008

048146 SEP 27

(2)

Corporation Assignment of Deed of Trust
(Continued)

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

048146 SEP 27 05

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0048148-00
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd   $25.00          Nbr-0000595746
                         VRB/R6/1-7

UPON RECORDATION RETURN TO:
Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Suite 111
Citrus Heights, CA 95610

## SUBORDINATION OF LEASEHOLD INTEREST

**NOTICE:** **THIS SUBORDINATION OF LEASEHOLD INTEREST CONTAINS A SUBORDINATION CLAUSE WHICH MAY RESULT IN YOUR LEASEHOLD INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INTEREST.**

This Subordination of Leasehold Interest ("Subordination Agreement"), is made and entered into this **14th** day of **September, 2005**, by **Samjin General Supply, Inc.** ("Tenant").

### W I T N E S S E T H

WHEREAS, TENANT is the occupant pursuant to the terms of that certain unrecorded lease (the "Lease"), of that building and property known as **3600 West Capitol Avenue, West Sacramento, CA 95691**, and more particularly described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

WHEREAS, **Mason Au and Nanjoo Au** ("Owner(s)") is/are the owner(s) of the Property and is/are the promissor(s) under that Note dated **September 14, 2005**, in favor of EDF RESOURCE CAPITAL, INC. ("Lender") in the principal sum of **$619,000.00.**

- 1 -

048148 SEP 27 05

EXHIBIT F

WHEREAS, a Mortgage in the form of a Deed of Trust, dated **September 14, 2005,** has been given by Owner(s) to Lender (the "Mortgage") for the purpose of securing the Note by Owner(s) to Lender, which Mortgage is secured, in part, by the Property and is recorded concurrently herewith.

NOW, THEREFORE, TENANT intending to be legally bound hereby, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agrees as follows:

1.   **Subordination.**   The TENANT leasehold interest and the Lease shall be and are by the execution of this Subordination Agreement, subordinate and subject to the Mortgage of Lender now or hereafter recorded to secure repayment by Owner(s) of the Note and all sums due or that become due pursuant to the Mortgage and any agreement by and between Owner(s) and Lender.

2.   **Notices.**   Any and all notices, elections or demands permitted or required to be made under this Subordination Agreement shall be in writing, signed by the party giving such notice, election or demand and shall be delivered personally, or sent by registered or certified United States Mail, postage prepaid, to the other party at the address set forth below, or at such other address within the United States as may have theretofore been designated in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of such notice, election or demand. For the purposes of this Subordination Agreement, the address of:

Lender is:   U.S. SMALL BUSINESS ADMINISTRATION
c/o EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Suite 111
Citrus Heights, CA 95610

TENANT is:   Samjin General Supply, Inc.
3600 West Capitol Avenue
West Sacramento, CA 95691

048148 SEP 27 '05

Owner(s) is/are:     **Mason Au and Nanjoo Au**
3600 West Capitol Avenue
West Sacramento, CA 95691

3.   **Binding Effect.**     This Subordination Agreement shall
be binding upon TENANT and his/her/its heirs, successors and
assigns and all of those holding title under any of them, and
the pronouns herein shall include, where appropriate, either
gender or both, singular or plural.

4.   **Inurement of Benefit.**     This Subordination Agreement
shall inure to the benefit of Owner(s), Lender, and their heirs,
successors and assigns and all of those holding title under any
of them, and the pronouns herein shall include, where
appropriate, either gender or both, singular or plural.

5.   **Non-Waiver.**     No indulgence, waiver, election or non-
election by the Lender under the Mortgage or any other loan
documents associated with the Mortgage shall affect this
Subordination Agreement.

6.   **Modification of Agreement.**     This document contains
the entire agreement of the subject matter herein and shall not
be modified, changed, altered or amended in any way except
through written amendments signed by TENANT, Owner(s), and
Lender.

7.   **Governing Law.**     It is agreed that the laws of the
State of California shall govern the construction and
interpretation of this Subordination Agreement and the rights
and obligations set forth herein; provided, however,
notwithstanding the foregoing to the contrary, in the event the
U.S. Small Business Administration (the "SBA") shall succeed to
the interest of Lender under this Subordination, this
Subordination will be interpreted and enforced under federal
law, including SBA regulations.   SBA may use state or local
procedures for filing papers, recording documents, giving
notice, foreclosing liens and other purposes.   By using such

- 3 -

048148 SEP 27 ⅖

3

procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Subordination, Lessee may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **Attorney's Fees.** In the event of any legal or equitable action, including any appeals or bankruptcy proceedings, which may arise hereunder, the prevailing party shall be entitled to recover its costs and its reasonable attorney's fees and paralegals' fees.

9. **Severance.** The invalidity or unenforceability of any portion of this Subordination Agreement shall not affect the remaining provisions and portions hereof.

Dated: September 14, 2005

TENANT:

Samjin General Supply, Inc.

By: _____
    Mason Au, President

By: _____
    Mason Au, Secretary
    Nanjoo

OWNER(S):

_____
Mason Au

_____
Nanjoo Au

- 4 -

048148 SEP 27 '05

4

State of California
County of _Sacramento_

On _September 23_ , 2005, before me, the undersigned
Notary Public, personally appeared _Mason Au_

(   )     personally know to me, or
[ x ]     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/~~she/it~~ executed the
same in his/~~her/its~~ authorized capacities, and that by
his/~~her/its~~ signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_V. Bressman_
_____
(Printed Name)

V. BRESSMAN
COMM. # 1337360
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3, 2006

State of California
County of _Sacramento_

On _September 23_ , 2005, before me, the undersigned
Notary Public, personally appeared _Nanjoo Au_

(   )     personally know to me, or
( x )     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/~~she/it~~ executed the
same in his/~~her/its~~ authorized capacities, and that by
his/~~her/its~~ signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_V. Bressman_
_____
(Printed Name)

V. BRESSMAN
COMM. # 1337360
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3, 2006

- 5 -

048148 SEP 27

5

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

048148 SEP 27

Title Order Number:
File Number:        3404-1708485

**Exhibit "A"**

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0048149-00
Acct 163-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd  $28.00          Nbr-0000535747
                              VRE/R6/1-8

UPON RECORDATION RETURN TO:
Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Suite 111
Citrus Heights, CA  95610

## SUBORDINATION OF LEASEHOLD INTEREST

NOTICE:   THIS SUBORDINATION OF LEASEHOLD INTEREST CONTAINS A
SUBORDINATION CLAUSE WHICH MAY RESULT IN YOUR LEASEHOLD INTEREST
IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN
THE LIEN OF SOME OTHER OR LATER SECURITY INTEREST.

This Subordination of Leasehold Interest ("Subordination
Agreement"), is made and entered into this 14th day of
September, 2005, by WABASH NATIONAL TRAILER CENTERS, INC.
("Tenant").

## W I T N E S S E T H

WHEREAS, TENANT is an occupant pursuant to the terms of
that certain unrecorded lease (the "Lease"), of the premises
known as 3600 West Capitol Avenue, West Sacramento, CA 95691,
and more particularly described in Exhibit "A" attached hereto
and incorporated herein by reference (the "Property").

WHEREAS, Mason Au and Nanjoo Au ("Owner(s)") is/are the
owner(s) of the Property and is/are the promissor(s) under that
Note dated September 14, 2005, in favor of EDF RESOURCE CAPITAL,
INC. ("Lender") in the principal sum of $619,000.00.

- 1 -

048149 SEP 27 05



WHEREAS, a Mortgage in the form of a Deed of Trust, dated September 14, 2005, has been given by Owner(s) to Lender (the "Mortgage") for the purpose of securing the Note by Owner(s) to Lender, which Mortgage is secured, in part, by the Property and is recorded concurrently herewith.

NOW, THEREFORE, TENANT intending to be legally bound hereby, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agrees as follows:

1. **Subordination.** The TENANT leasehold interest and the Lease shall be and are by the execution of this Subordination Agreement, subordinate and subject to the Mortgage of Lender now or hereafter recorded to secure repayment by Owner(s) of the Note and all sums due or that become due pursuant to the Mortgage and any agreement by and between Owner(s) and Lender.

2. **Notices.** Any and all notices, elections or demands permitted or required to be made under this Subordination Agreement shall be in writing, signed by the party giving such notice, election or demand and shall be delivered personally, or sent by registered or certified United States Mail, postage prepaid, to the other party at the address set forth below, or at such other address within the United States as may have theretofore been designated in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of such notice, election or demand. For the purposes of this Subordination Agreement, the address of:

Lender is:    U.S. SMALL BUSINESS ADMINISTRATION
                c/o EDF RESOURCE CAPITAL, INC.
                7509 Madison Avenue, Suite 111
                Citrus Heights, CA 95610

TENANT is:    WABASH NATIONAL TRAILER CENTERS, INC.
                3600 West Capitol Avenue
                West Sacramento, CA 95691

- 2 -

048149 SEP 27 '05

Owner(s) is/are:      **Mason Au and Nanjoo Au**
                      **3600 West Capitol Avenue**
                      **West Sacramento, CA 95691**

3.   **Binding Effect.**      This Subordination Agreement shall be binding upon TENANT and his/her/its heirs, successors and assigns and all of those holding title under any of them, and the pronouns herein shall include, where appropriate, either gender or both, singular or plural.

4.   **Inurement of Benefit.**      This Subordination Agreement shall inure to the benefit of Owner(s), Lender, and their heirs, successors and assigns and all of those holding title under any of them, and the pronouns herein shall include, where appropriate, either gender or both, singular or plural.

5.   **Non-Waiver.**      No indulgence, waiver, election or non-election by the Lender under the Mortgage or any other loan documents associated with the Mortgage shall affect this Subordination Agreement.

6.   **Modification of Agreement.**      This document contains the entire agreement of the subject matter herein and shall not be modified, changed, altered or amended in any way except through written amendments signed by TENANT, Owner(s), and Lender.

7.   **Governing Law.**      It is agreed that the laws of the State of California shall govern the construction and interpretation of this Subordination Agreement and the rights and obligations set forth herein; provided, however, notwithstanding the foregoing to the contrary, in the event the U.S. Small Business Administration (the "SBA") shall succeed to the interest of Lender under this Subordination, this Subordination will be interpreted and enforced under federal law, including SBA regulations.  SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens and other purposes.  By using such

- 3 -

048149 SEP 27 83

3

procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Subordination, Lessee may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.  **Attorney's Fees.**  In the event of any legal or equitable action, including any appeals or bankruptcy proceedings, which may arise hereunder, the prevailing party shall be entitled to recover its costs and its reasonable attorney's fees and paralegals' fees.

9.  **Severance.**  The invalidity or unenforceability of any portion of this Subordination Agreement shall not affect the remaining provisions and portions hereof.

Dated:  September 1̶4̶, 2005  [handwritten: 23]

This document is being signed in counterpart by the parties hereto.

TENANT:

WABASH NATIONAL TRAILER CENTERS, INC.

By:  _____

Printed name: ROBERT SMITH

title:  VP - CFO

OWNER(S):

_____

Kason Au

_____

Nanjoo Au

048149 SEP 27 B

4

procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Subordination, Lessee may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   **Attorney's Fees.**   In the event of any legal or equitable action, including any appeals or bankruptcy proceedings, which may arise hereunder, the prevailing party shall be entitled to recover its costs and its reasonable attorney's fees and paralegals' fees.

9.   **Severance.**   The invalidity or unenforceability of any portion of this Subordination Agreement shall not affect the remaining provisions and portions hereof.

Dated:  September 14, 2005

This document is being signed in counterpart by the parties hereto.

TENANT:

WABASH NATIONAL TRAILER CENTERS, INC.


By: _____
       Printed name:

title: _____


OWNER(S):

_____
Mason An

_____
Nanjoo Au

- 4 -

ption: Yolo,CA Document-Year.DocID 2005.48149 Page: 5 of 8
3 Comment:

State of ~~California~~ *Indiana*
County of *Tippecanoe*

On *September 23*, 2005, before me, the undersigned
Notary Public, personally appeared *Robert J. Smith*

   (   )     personally know to me, or
   ( x )     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she/it executed the
same in his/her/its authorized capacities, and that by
his/her/its signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_____
(Printed Name)


State of California
County of _____

On _____, 2005, before me, the undersigned
Notary Public, personally appeared _____

   (   )     personally know to me, or
   ( x )     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she/it executed the
same in his/her/its authorized capacities, and that by
his/her/its signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_____
(Printed Name)

- 5 -

048149 SEP 27

State of California
County of _Sacramento_

On _September 23_ , 2005, before me, the undersigned
Notary Public, personally appeared _Meson Au_

(   )     personally know to me, or
( x )     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that ~~he/she/it~~ executed the
same in ~~his~~/her/~~its~~ authorized capacities, and that by
~~his~~/her/~~its~~ signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_V Bressman_
_____
(Printed Name)

V. BRESSMAN
COMM. # 1337360
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3, 2006


State of California
County of _Sacramento_

On _October 23_ , 2005, before me, the undersigned
Notary Public, personally appeared _Kenjoo Au_

(   )     personally know to me, or
( x )     proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she/~~it~~ executed the
same in his/her/~~its~~ authorized capacities, and that by
his/her/~~its~~ signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Notary's Signature)

_V Bressman_
_____
(Printed Name)

V. BRESSMAN
COMM. # 1337360
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN. 3, 2006

- 5 -

048149 SEP 27

ption: Yolo,CA Document-Year.DocID 2005.48149 Page: 7 of 8
3 Comment:

Title Order Number:

File Number:        3404-1708485

## Exhibit "A"

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET; AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

## END OF DOCUMENT

048149 SEP 27 8

Case 2:09-cv-02438-GEB-JFM   Document 1   Filed 08/31/09   Page 76 of 93

RECORDING REQUESTED BY
First American Title Company

AND WHEN RECORDED MAIL TO:
The Law Office of Joni L Walaski
Attn: Joni L Walaski, Esq
645 Madison Avenue, 19th Floor
New York, New York 10022

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0049197-00
Acct 103-First American Title
Friday, SEP 30, 2005 15:13:00
Ttl Pd   $25.00        Nbr-0000596971
                       KIM/R7/1-7

Space Above This Line for Recorder's Use Only

A.P.N.: 008-030-13-1                    File No.: 3404-1708485 (VB)

## Subordination, Non-Disturbance and Attornment Agreement
Document Title

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6 
049197 SEP 30 05

ption: Yolo,CA Document-Year.DocID 2005.49197 Page: 1 of 7
3 Comment:                                           EXHIBIT 

# SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS AGREEMENT, dated the 23 day of September , 2005; between BLX CAPITAL, LLC, hereinafter called "Mortgagee", and Samjin General Supply, Inc., hereinafter called "Tenant".

## WITNESSETH:

(a)    Tenant has entered into a certain lease dated September_____ ,2005 with Mason Au and Nanjoo Au, hereinafter called "Landlord", covering premises in a certain building known as 3600 West Capital Avenue, Sacramento, California 95691 and located in Yolo County, California (the "Lease"); and,

(b)    Mortgagee has agreed to make or has made a mortgage loan of $1,780,000.00 (the "Mortgage") to the Landlord and the parties desire to set forth their agreement as hereinafter set forth.

NOW THEREFORE, in consideration of the premises and for the sum of One Dollar ($1.00) by each party in hand paid to the other, the receipt of which is hereby acknowledged, it is hereby agreed as follows:

1.    The Lease is and shall be subject and subordinate to the Mortgage insofar as it affects the real property of which the Leased Premises (as defined in the Lease) form a part, and to all renewals, modifications, consolidations, replacements and extensions thereof, to the full extent of the principal sum secured thereby and interest thereon.

2.    Tenant agrees that it will attorn to and recognize any purchaser at a foreclosure sale under the Mortgage, any transferee who acquires the demised premises by deed in lieu of foreclosure, and the successors and assigns of such purchasers, as its Landlord for the unexpired balance (and any extensions, if exercised) of the Term (as defined in the Lease) of the Lease upon the same terms and conditions set forth in the Lease.

3.    In the event that it should become necessary to foreclose the Mortgage, Mortgagee thereunder will not terminate the Lease nor join Tenant in summary or foreclosure proceedings so long as Tenant is not in default under any of the terms, covenants, or conditions of said Lease beyond any applicable grace period provided for therein.

4.    In the event that Mortgagee shall succeed to the interest of Landlord under the Lease, Mortgagee shall not be:

(a)    liable for any act or omission of any prior landlord (including Landlord); or

SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT - Page 1
w:\3195\forms\subordinm

049197 SEP 30 5



(b)    subject to any offsets which Tenant might have against any prior landlord (including Landlord); or

(c)    bound by any rent or additional rent which Tenant might have paid for more than the current month to any prior landlord (including Landlord); or

(d)    bound by any amendment or modification of the Lease made without its consent.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

MORTGAGEE:

BLX CAPITAL, LLC

By: _____

Name: ___Darlene F. Reagan_____

Its: _____Vice President_____

TENANT:
SAMJIN GENERAL SUPPLY, INC.

By:_____
   Mason Au, President

SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT - Page 2
w: 13198 forms\subord.scn

049197 SEP 30 05

3

(b)     subject to any offsets which Tenant might have against any prior landlord (including Landlord); or

(c)     bound by any rent or additional rent which Tenant might have paid for more than the current month to any prior landlord (including Landlord); or

(d)     bound by any amendment or modification of the Lease made without its consent.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

MORTGAGEE:

BLX CAPITAL, LLC

By: _____

Name:   __Darlene F. Reagan_____

Its:    __Vice President_____

TENANT:
SAMJIN GENERAL SUPPLY, INC.

By: _____

Mason Au, President

049197 SEP 30 

STATE OF _Texas_  )
COUNTY OF _Dallas_  )

The foregoing instrument was acknowledged before me this 26ᵗʰ day of _September_, 20 05, by _Darlene F. Reagen_, _Senior Vice President_ of _BLX Capital LLC_, a _Delaware_ corporation.

Witness my hand and official seal.

_Colleen M. Monier_ (signature)

Notary Public



COLLEEN M. MONIER
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/27/2007

My commission expires: _10/27/07_

049197 SEP 30 05

5

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF _CALIFORNIA_ )SS
COUNTY OF _SACRAMENTO_ )

On _September 23 2005_ before me, _V. Bressman_ personally appeared _MASON HU_ ~~personally known to~~ me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(ies) and that by his/~~her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _V Bressman_

> V. BRESSMAN
> COMM. # 1337360
> NOTARY PUBLIC-CALIFORNIA
> ALAMEDA COUNTY
> COMM. EXP. JAN. 3, 2006

This area for official notarial seal.

### OPTIONAL SECTION
### CAPACITY CLAIMED BY SIGNER

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the documents.

- [ ] INDIVIDUAL
- [X] CORPORATE OFFICER(S)   TITLE(S) _PRESIDENT_
- [ ] PARTNER(S)   [ ] LIMITED   [ ] GENERAL
- [ ] ATTORNEY-IN-FACT
- [ ] TRUSTEE(S)
- [ ] GUARDIAN/CONSERVATOR
- [ ] OTHER

SIGNER IS REPRESENTING:

_Saltin General Supply Inc_
**Name of Person or Entity**                    **Name of Person or Entity**

### OPTIONAL SECTION

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

### THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW

TITLE OR TYPE OF DOCUMENT: _Subordination Non Disturbance + Attornment_

NUMBER OF PAGES _____    DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE _____

Reproduced by First American Title Insurance 1/2001

049197 SEP 30 

Title Order Number:
File Number:        3404 1708485

## Schedule "A"

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

END OF DOCUMENT          049197 SEP 30 05          7

Recording Requested by and
When Recorded Mail to:

**Amy Pietrucha**
**EDF REsource Capital, Inc.**
**7509 Madison Avenue, Suite 111**
**Citrus Heights, CA 95610**

YOLO Recorder's Office
Freddie Oakley, County Recorder
**DOC- 2006-0008505-00**
Check Number  9258
REGO BY EDF RESOURCE CAPITAL INC
Thursday, MAR 02, 2006 12:11:00
Ttl Pd   $22.00          Nbr-000627613
                              CAG/R5/1-6

---

TITLE OF DOCUMENT

## THIRD PARTY LENDER AGREEMENT

008505 MAR-2 06



EXHIBIT H

## THIRD PARTY LENDER AGREEMENT

This THIRD PARTY LENDER AGREEMENT, dated the __4th__ day of __October__ , 2005, by and between BLX Capital, LLC, whose address is 777 Campus Commons Road, Ste. #200, Sacramento, CA 95825 (the "Third Party Lender") and EDF REsource Capital, Inc., whose address is 7509 Madison Ave., Ste #111, Citrus Heights, CA 95610 (the "CDC"), recites and provides:

### RECITALS

Mason Au and Nanjoo Au (the "Borrower") is the owner of the real estate and other collateral described on the attached Exhibit A (the "Collateral"). The Third Party Lender has made two loans, both of which have been fully advanced, one in the amount of One Million Seven Hundred Eighty Thousand and 00/100 Dollars ($1,780,000.00) (the "Term Third Party Lender Loan") and a second in the amount of Six Hundred Thousand and 00/100 Dollars ($600,000.00) (the "Interim Third Party Lender Loan").

The Term Third Party Lender Loan is secured, among other things, by:

- a first lien deed of trust or mortgage dated __September 23__ , 2005 and recorded __September 27___ , 2005 in Instrument No. __2005-48140__ in the land records for Yolo County (together with any modifications, extensions or amendments thereof) (the "Third Party Lender Deed of Trust/Mortgage").

The Interim Third Party Lender Loan is secured, among other things, by:

- a second lien deed of trust or mortgage dated __September 23__ , 2005 and recorded __September 27__ , 2005 in Instrument No. __2005-48142__ in the land records for Yolo County (together with any modifications, extensions or amendments thereof) (the "Third Party Lender Deed of Trust/Mortgage").

The CDC has agreed to make a loan in the amount of Six Hundred Nineteen Thousand and 00/100 Dollars ($619,000.00) (the "504 Loan") to the Borrower. The 504 Loan will be secured, among other things, by:

- a deed of trust or mortgage (the "504 Deed of Trust/Mortgage") to be recorded among the aforesaid land records.

### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing recitals, the mutual agreements set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Third Party Lender agrees as follows:

1. Balance of the Term Third Party Lender Loan. The balance of the Term Third Party Lender Loan is One Million Seven Hundred Eighty Thousand and 00/100 Dollars ($1,780,000.00), and has a maturity date of __September 26, 2030__ and an interest rate of __4.42% over Libor Rate__ as required under the Authorization. Following the making of the 504 Loan, the Third Party Lender will receive Six Hundred Thousand and 00/100 Dollars ($600,000.00) from the CDC, which the Third Party Lender will apply to pay off the principal balance of the Interim Third Party Lender Loan and, upon payment of any accrued, but unpaid interest on the Interim Third Party Lender Loan, The Third Party Lender shall release the Interim Third Party Lender Deed of Trust/Mortgage and release, cancel or mark as paid all other liens and documents securing the Interim Third Party Lender Loan.

008505 MAR.-2 08

2

2.    Subordination of Future Advances and Default Charges.  Except for advances made for reasonable costs of collection, maintenance and protection of the Third Party Lender's lien(s), the Third Party Lender hereby subordinates to the 504 Loan and the lien(s) securing the 504 Loan (a) any sum advanced to the Borrower by the Third Party Lender after the date of this Agreement and (b) any prepayment penalties, late fees, and increased default interest in connection with the Third Party Lender Loan.

3.    Compliance with 504 Loan Program Requirements.  The Third Party Lender confirms that the note and all other documents executed in connection with the Third Party Lender Loan (a) evidence a loan that does not exceed the principal amount permitted by the Authorization for Debenture Guarantee ("SBA 504 Loan") issued by the U.S. Small Business Administration ("SBA") to CDC to assist Borrower, (b) have no open-ended features and allow only future advances for the reasonable costs of collection, maintenance and protection of the Third Party Lender's lien thereunder, (c) are not cross-collateralized with any other financing now or hereafter to be provided by Third Party Lender, (d) have no early call features, (e) are not payable on demand unless the Third Party Lender Loan is in default, (f) have a term of at least, and do not require a balloon payment prior to, ten years for a 20-year 504 loan or seven years for a 10-year 504 loan, (g) have a reasonable interest rate that does not, and will not, exceed the maximum interest rate for a Third Party Loan as published by SBA, and (h) do not establish a preference in favor of the Third Party Lender as compared to CDC or SBA other than the Third Party Lender's senior lien position.  The Third Party Lender agrees that if the note or any other document executed in connection with the Third Party Lender Loan or any provision therein does not comply with these requirements, then the Third Party Lender waives its right to enforce any such noncomplying document or provision unless the Third Party Lender has obtained the prior written consent of CDC and/or SBA permitting such enforcement.

4.    Waiver of Enforcement of Covenant Not to Encumber the Collateral.  If the Third Party Lender Deed of Trust/Mortgage or any document executed in connection with the Third Party Lender Loan contains any provision prohibiting the Borrower from further encumbering the Collateral, the Third Party Lender waives its right to enforce any such provision as it might apply to the lien arising from the 504 Deed of Trust/Mortgage securing or any other document securing or evidencing the 504 Loan.

5.    Notice of Default Under the Third Party Lender Loan.  If any default, event of default or delinquency, upon which the Third Party Lender intends to take action, occurs under the Third Party Lender Deed of Trust/Mortgage or any document executed in connection with the Third Party Lender Loan, then the Third Party Lender agrees to give the CDC and SBA written notice of such default, event of default or delinquency and the opportunity to cure or to purchase the Third Party Lender's note and the Third Party Lender Deed of Trust/Mortgage prior to foreclosure.  Such notice must be given within thirty (30) days after the default, event of default or delinquency upon which the Third Party Lender intends to take action and at least sixty (60) days prior to the date of any proposed sale and the Third Party Lender will not sell all or any portion of the Collateral without giving the CDC and the SBA such notice.  Notice under this Agreement shall be deemed to have been given when sent by certified or registered mail, return receipt requested, addressed, as the case may be, to the CDC at 7509 Madison Ave., Ste #111, Citrus Heights, CA 95610, Attention: Servicing, and to the SBA at 650 Capitol Mall, Suite #7-500, Sacramento, CA 95814, Attention: District Counsel.

6.    Successors and Assigns.  This Agreement shall inure to the benefit of and bind the respective parties to this Agreement and their successors and assigns.

7.    The Third Party Lender certifies the following:

008505 MAR -2 '06

ption: Yolo,CA Document-Year.DocID 2006.8505 Page: 3 of 6
3 Comment:

- The Third Party Lender has no knowledge of any unremedied substantial adverse change in the condition of the Borrower and Operating Company since the date of the loan application to the Third Party Lender, and

- The Third Party Lender will make no further disbursements on the Interim Loan, and

- The Interim Loan has been disbursed in reasonable compliance with the Authorization.

8.  Compliance with the U.S. Patriot Act.

The Third Party Lender represents that it: (1) is subject to the Joint Final Rule on Customer Identification Programs in 31 CFR 103.121; (2) is subject to a rule requiring establishment of an anti-money laundering program pursuant to 31 U.S.C. 5318(h), and has implemented its program; and (3) is regulated by one of the following Federal functional regulators: the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision or the National Credit Union Administration. The Third Party Lender further certifies that it performs the specified requirements of its Customer Identification Program for each of its customers who receive financing from the Third Party Lender.

BLX Capital, LLC

By: _Darlene Reagan_

Title: _SVP_

SIGNATURES MUST BE NOTARIZED

State of ~~California~~ TEXAS
County of _DALLAS_

On _October 6_, 2005, before me, the undersigned Notary Public, personally appeared _____

(X)  personally know to me, or  _DARLENE F. REAGAN_
(  )  proved to me on the basis of satisfactory evidence

to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she/it executed the same in his/her/its authorized capacities, and that by his/her/its signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

THERESA ANN KING
Notary Public
STATE OF TEXAS
My Comm Exp 06/16/2008

_____
(Notary's Signature)

THERESA ANN KING
(Printed Name)

Page 3 of 3

008505 MAR-2 ᵣₑ

EDF RESOURCE CAPITAL, INC.

By: _____
      Frank F. Dinsmore, Chief Executive Officer

## ASSIGNMENT TO SBA

CDC assigns this Third Party Lender Agreement to SBA

EDF RESOURCE CAPITAL, INC.

By: _____
      Frank F. Dinsmore, Chief Executive Officer

STATE OF CALIFORNIA                    )
                                       )SS.
COUNTY OF SACRAMENTO                   )

On October 6, 2005 before me, _____the undersigned_____, personally appeared Frank F. Dinsmore personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

AMY L PETRUCHA
Commission # 1529986
Notary Public - California
Sacramento County
My Comm. Expires Nov 26, 2008

(Seal)

008505  MAR -2

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

END OF DOCUMENT   008505 MAR -2'08

6

`LAW OFFICES`

# LEVY, SMALL & LALLAS

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA 90049-1633
TELEPHONE (310) 471-3000

FACSIMILE: (310) 471-7990

IN REPLY PLEASE REFER TO:

CHARLES M. LEVY*
STEVEN G. SMALL*
TOM LALLAS*
LEO D. PLOTKIN*
WALTER R. MITCHELL
WILLIAM J. WIPPICH
ANGEL F. CASTILLO
RAYMOND T. SUNG
MARK D. HURWITZ
CAROL A. ENSALACO
BRADLEY I. KRAMER

*A PROFESSIONAL CORPORATION

May 29, 2009

9008.4554

## VIA FIRST CLASS MAIL

Mason Au
Nanjoo Au
3600 West Capital Avenue
Sacramento, CA 95691

Samjin General Supply, Inc.
c/o Diane Crowe
2250 E. 12th Street
Oakland, CA 94606

Re:   Default on (a) Letter Loan Agreement dated September 26, 2005 by and between
      Mason Au, Nanjoo Au, and Samjin General Supply, Inc. dba Sam Jin Roofing
      Supply on the one hand, and BLX Capital, LLC on the other; (b) Adjustable Rate
      Promissory Note dated September 26, 2005 by and between Mason Au, Nanjoo
      Au, and Samjin General Supply, Inc. dba Sam Jin Roofing Supply on the one
      hand, and BLX Capital, LLC on the other; and (c) associated loan documents.

Dear Mr. and Mrs. Au:

   This firm represents BLX Capital, LLC ("BLX") and its successor-in-interest Ciena
Capital, LLC in connection with the above referenced matter.

   As of the present date, each of Mason Au and Nanjoo Au (collectively, "You") are in
default of Your obligations to BLX under, among other documents, the Letter Loan Agreement
(the "Loan Agreement") dated September 26, 2005 by and between, among other parties, You and
BLX in the principal amount of $1,780,000 and the Adjustable Rate Promissory Note (the "Note")
dated September 26, 2005 by and between, among other parties, You and BLX in the identical
principal amount. Events of Default under the Loan Agreement and Note have occurred as
defined by Section 3(a) of the Loan Agreement and Section 10 of the Note including, but not
limited to, Your failure to repay the amounts due and owing under the Note.

   Accordingly, pursuant to its authority under Section 10 of the Note, BLX hereby
accelerates and declares that all obligations due and owing by You to BLX under the Loan
Agreement and Note are immediately due and payable, and hereby demands that you immediately
pay to BLX the full amount due and owing by You to BLX under the Note, which, as of May 19,
2009, totals $1,766,762.45 plus all accruing fees, charges, and interest accruing thereafter and
including all attorneys' fees and expenses incurred by BLX in connection with the above from
April 1, 2009 to the present.

EXHIBIT I

LAW OFFICES

LEVY, SMALL & LALLAS

Mason Au
Nanjoo Au
May 29, 2009
Page 2


       In the event that You fail to pay the foregoing amount to BLX in its entirety by the close of business on June 15, 2009, BLX will exercise all of its rights and remedies available under the Loan Agreement, the Note, and all other associated loan documents, all of which are expressly reserved.  Please direct any and all payments to our office at the above indicated address.


       Very truly yours,


       Bradley I. Kramer


BIK/23704

LAW OFFICES

# LEVY, SMALL & LALLAS

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CALIFORNIA 90049-1633
TELEPHONE (310) 471-3000

CHARLES M. LEVY*
STEVEN G. SMALL*
TOM LALLAS*
LEO D. PLOTKIN*
WALTER R. MITCHELL
WILLIAM J. WIPPICH
ANGEL F. CASTILLO
RAYMOND T. SUNG
MARK D. HURWITZ
CAROL A. ENSALACO
BRADLEY I. KRAMER

*A PROFESSIONAL CORPORATION

FACSIMILE: (310) 471-7990

IN REPLY PLEASE REFER TO:

9008.4554

May 29, 2009

## VIA FIRST CLASS MAIL

Samjin General Supply, Inc.
c/o Diane Crowe
2250 E. 12th Street
Oakland, CA 94606

Mason Au
Nanjoo Au
3600 West Capital Avenue
Sacramento, CA 95691

Re:   Default on (a) Letter Loan Agreement dated September 26, 2005 by and between
Mason Au, Nanjoo Au, and Samjin General Supply, Inc. dba Sam Jin Roofing
Supply on the one hand, and BLX Capital, LLC on the other; (b) Adjustable Rate
Promissory Note dated September 26, 2005 by and between Mason Au, Nanjoo
Au, and Samjin General Supply, Inc. dba Sam Jin Roofing Supply on the one
hand, and BLX Capital, LLC on the other; and (c) associated loan documents.

Dear Ms. Crowe:

This firm represents BLX Capital, LLC ("BLX") and its successor-in-interest Ciena
Capital, LLC in connection with the above referenced matter.

As of the present date, Samjin General Supply, Inc. dba Sam Jin Roofing Supply
("Samjin") is in default of its obligations to BLX under, among other documents, the Letter Loan
Agreement (the "Loan Agreement") dated September 26, 2005 by and between, among other
parties, Samjin and BLX in the principal amount of $1,780,000 and the Adjustable Rate
Promissory Note (the "Note") dated September 26, 2005 by and between, among other parties,
Samjin and BLX in the identical principal amount. Events of Default under the Loan Agreement
and Note have occurred as defined by Section 3(a) of the Loan Agreement and Section 10 of the
Note including, but not limited to, Samjin's failure to repay the amounts due and owing under the
Note.

Accordingly, pursuant to its authority under Section 10 of the Note, BLX hereby
accelerates and declares that all obligations due and owing by Samjin to BLX under the Loan
Agreement and Note are immediately due and payable, and hereby demands that you immediately
pay to BLX the full amount due and owing by Samjin to BLX under the Note, which, as of May
19, 2009, totals $1,766,762.45 plus all accruing fees, charges, and interest accruing thereafter and
including all attorneys' fees and expenses incurred by BLX in connection with the above from
April 1, 2009 to the present.

LAW OFFICES

# LEVY, SMALL & LALLAS

Samjin General Supply, Inc.
c/o Diane Crowe
May 29, 2009
Page 2


In the event that Samjin fails to pay the foregoing amount to BLX in its entirety by the close of business on June 15, 2009, BLX will exercise all of its rights and remedies available under the Loan Agreement, the Note, and all other associated loan documents, all of which are expressly reserved.  Please direct any and all payments to our office at the above indicated address.


Very truly yours,

Bradley I. Kramer

BIK/23705

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the office of the United States Attorney for the Eastern District of California and is a person of such age and discretion as to be competent to serve papers.

That on August 31, 2009, she served a copy of:

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT
UNITED STATES SMALL BUSINESS ADMINISTRATION

by placing said document(s) in postage paid envelope(s) addressed to the persons listed below, which are the last known addressees, and deposited said envelope(s) in the United States mail in Sacramento, California.

ADDRESSEE(S):

Leo D. Plotkin, Esq.
Bradley I. Kramer, Esq.
LEVY, SMALL & LALLAS
815 Moraga Drive
Los Angeles, CA 90049

Samjin General Supply, Inc.
3600 West Capitol Avenue
West Sacramento, CA 95691

Samjin General Supply, Inc.
2250 East 12th Street
Oakland, CA 94606

Wabash National Trailer Centers, Inc.
3600 West Capitol Avenue
West Sacramento, CA 95691

Wabash National Trailer Centers, Inc.
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833

Mason Au and Nanjoo Au
3600 West Capitol Avenue
West Sacramento, CA 95691

JANET BAIN
Success Tech Contract Legal Assistant

Notice of Removal