1  LAWRENCE G. BROWN
   United States Attorney
2  BOBBIE J. MONTOYA
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814-2322
4  Telephone: (916) 554-2775

5  Attorneys for the United States of America

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 BLX CAPITAL, LLC,                          Case No. 2:09-cv-02438 GEB-JFM
   a Delaware limited liability company,
12
                  Plaintiff,                   EXHIBITS A THROUGH H TO UNITED
13                                             STATES OF AMERICA'S AMENDED
           v.                                  ANSWER TO PLAINTIFF'S COMPLAINT
14                                             AND CROSSCLAIM
   SAMJIN GENERAL SUPPLY, INC.,
15 dba SAM JIN ROOFING SUPPLY, a
   California corporation; MASON AU, an
16 individual; NANJOO AU, an individual;
   U.S. SMALL BUSINESS
17 ADMINISTRATION, a United States
   government agency; WABASH
18 NATIONAL TRAILER CENTERS, INC.,
   and DOES 1 through 20, inclusive,
19
                  Defendants.
20

21 ─────────────────────────────────────

22 UNITED STATES OF AMERICA,

                  Cross-Plaintiff,
23
           v.
24
   SAMJIN GENERAL SUPPLY, INC.
25 dba SAM JIN ROOFING SUPPLY, a
   California corporation; MASON AU, an
26 individual; NANJOO AU, an individual,

27                Cross-Defendants.

28 ─────────────────────────────────────

Exhibits A Through H to United States of America's
Amended Answer to Plaintiff's Complaint and                    1
Crossclaim

1    The United States of America hereby files the attached Exhibits A through H in support of its

2  Amended Answer to Plaintiff's Complaint and Crossclaim.

3                                        Respectfully submitted,

4  DATED:  October 27, 2009              LAWRENCE G. BROWN
                                          United States Attorney
5
                                          /s/ Bobbie J. Montoya
6                            By:
                                          _____
7                                         BOBBIE J. MONTOYA
                                          Assistant U.S. Attorney
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibits A Through H to United States of America's
Amended Answer to Plaintiff's Complaint and                2
Crossclaim

# Exhibit A





## U.S. Small Business Administration

# AUTHORIZATION FOR DEBENTURE GUARANTEE (SBA 504 LOAN)

| SBA Loan # | PCL 905-607-4005 |
|---|---|
| SBA Loan Name | Samjin General Supply, Inc. |
| Approval Date | August 22, 2005 |

CDC:

EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Suite #111
Citrus Heights, CA 95610

U. S. Small Business Administration (SBA):

Sacramento District Office
650 Capitol Mall - Suite 7-500
Sacramento, CA 95814

SBA will guarantee, under the following terms and conditions, a 20 year Debenture ("Debenture") in the amount of $619,000.00 to be issued by CDC and used to fund a loan ("504 Loan") to assist:

Borrower: (EPC)

1.  Mason Au and Nanjoo Au
    3600 West Capitol Avenue
    West Sacramento, CA 95691-2114

Operating Company:

1.  Samjin General Supply, Inc. (Guarantor)
    3600 West Capitol Avenue
    West Sacramento, CA 95691-2114

## A.  PROJECT TO BE FINANCED

1.  **Project Property ("Project Property")**

    Debenture Proceeds will be used as part of the financing for:

    a.  the purchase of real estate, located at 3600 West Capitol Avenue, West Sacramento CA 95691-2114.

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 1
(504 Wizard 2004.2)

2.   **Project Costs ("Project Costs")** include:

| | | |
|---|---|---|
| a. | Purchase Land | $0.00 |
| b. | Purchase Land & Building | $2,800,000.00 |
| c. | Construction/Remodeling | $0.00 |
| d. | Purchase/Install Equipment | $0.00 |
| e. | Purchase/Install Fixtures | $0.00 |
| f. | Professional Fees | $0.00 |
| g. | Other Expenses (construction contingencies, interim interest) | $0.00 |
| h. | *TOTAL Project Cost* | *$2,800,000.00* |

## B.   PROJECT FINANCING

1.   **Debenture Proceeds:** Debenture Proceeds will be used to pay Administrative Costs and the final 21.43% of the total Project Cost. Prior to the Debenture sale, the CDC conducts a 504 Loan Closing ("504 Loan Closing"), and forwards the closing documents to SBA. After review and approval, SBA forwards the closing documents for Debenture Sale. At or prior to the 504 Loan Closing, Borrower, Operating Company and CDC must sign a Servicing Agent Agreement certifying as to the actual use of the Debenture Proceeds and authorizing a Central Servicing Agent ("CSA") to handle all disbursements and payments under the Debenture.

a.   SBA/CDC Share: 21.43% of total Project Cost ("Net Debenture Proceeds")                                                                $600,000.00

b.   Administrative Costs ("Administrative Costs")

| | | | |
|---|---|---|---|
| (1) | SBA Guarantee Fee (a. x .005) | | $3,000.00 |
| (2) | Funding Fee (a. x 0.0025) | | $1,500.00 |
| (3) | CDC Processing Fee (a. x 0.015) | | $9,000.00 |
| (4) | Closing Costs | | |
| | (i)  CDC Closing Fee (not to exceed $2,500) | $2,300.00 | |
| | (ii) Other Out of Pocket Closing Costs (excluding legal fees) | $0.00 | $2,300.00 |
| (5) | Subtotal (b.1 through b.4) | | $15,800.00 |
| (6) | Underwriters Fee* | | $2,476.00 |
| (7) | Total (b.5 plus b.6) | | $18,276.00 |

c.   Total Debenture Amount ("Gross Debenture Proceeds") (a. Plus b.7, rounded up to next thousand)                                          $619,000.00

d.   Balance to Borrower (c. minus (a. plus b.7))                                                                                                          $724.00

   *\* Underwriters fee calculated as follows:  For 20 year Debentures, the sum of a. and b.5 divided by 0.99600; round this number up to the next highest thousand; multiply this number by 0.00400. For 10 year Debentures, the sum of a. and b.5 divided by 0.99625, round this number up to the next highest thousand; multiply this number by 0.00375.*

e.   **Disbursement:** CDC must issue a Debenture and the Debenture Proceeds must be disbursed no later than 12 months from the approval date of this Authorization, unless CDC or SBA extends the time in writing.

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 2
(504 Wizard 2004.2)

2.   **Interim Financing (paid off by the Debenture):**

    a.   **Interim Lender**: An interim loan in the total principal amount of $600,000.00 will be provided by the following lender(s) ("Interim Lender"):

        (1)   Business Loan Express in the principal amount of $600,000.00.

    b.   **Application of Net Debenture Proceeds to Interim Loan**: Upon sale of the Debenture, the Net Debenture Proceeds (the portion of Debenture Proceeds that finance Project Cost) will be applied to pay off the balance of the interim loan. If the Interim Lender is also the Third Party Lender, this payment will reduce the total balance owed to Third Party Lender to the amount specified in Paragraph B.3.a. below.

    c.   **Required Certifications Before 504 Loan Closing**: Following completion of the Project, CDC must cause Interim Lender to certify the amount of the interim loan disbursed, that the interim loan has been disbursed in reasonable compliance with this Authorization, and that it has no knowledge of any unremedied substantial adverse change in the condition of the Borrower and Operating Company since the date of the loan application to the Interim Lender.

3.   **Permanent Third Party Lender Loan:**

    a.   Business Loan Express ("Third Party Lender") will provide permanent project financing in the amount of $1,780,000.00 ("Third Party Lender Loan"). This amount is 63.57% of the total project cost.

    b.   The Third Party Lender's note and loan documents must not:

        (1)   allow future advances except advances made for the reasonable costs of collection, maintenance, and protection of the Third Party Lender's lien;

        (2)   be cross-collateralized with other financing provided by Third Party Lender;

        (3)   have an early call feature;

        (4)   be payable on demand unless the Third Party Lender's note is in default;

        (5)   have a term less than, or require a balloon payment prior to, ten years.

    c.   At or prior to 504 Loan Closing, Third Party Lender must execute a Third Party Lender Agreement that:

        (1)   Confirms that the Third Party Lender note and loan documents do or will comply with paragraph b. above, or waives its right to enforce any provisions in the note and loan documents that do not comply with these SBA requirements;

        (2)   Subordinates any prepayment penalties, late fees, and increased default interest to the CDC/SBA lien. Any advances made for the reasonable costs of collection, maintenance, and protection of the Third Party Lender's lien need not be subordinated;

        (3)   Waives as to the CDC/SBA lien any provisions in its lien instruments prohibiting further encumbrances; and

        (4)   Third Party Lender will provide written notice to CDC and SBA of default within 30 days of any delinquency upon which Third Party Lender intends to take action, and 60 days notice prior to foreclosure.

    d.   **Third Party Lender Fee.** SBA must collect a one-time Third Party Lender Participation fee equal to 50 basis points on the Third Party Lender's participation in a project when the Third Party Lender is in a senior credit position to SBA on the project. SBA may accept payment of this fee from the Third Party Lender, the 504 borrower, or the CDC. This payment may be made to SBA by (1) the Third Party Lender sending to the CDC a

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 3
(504 Wizard 2004.2)

certified check or guaranteed funds check made payable to the CSA, and CDC forwarding it to the CSA with the 504 Loan Closing documentation, or (2) the CDC may collect the fee and the CSA will deduct the amount of the fee from the amount sent to the CDC after Debenture sale.

4. **Borrower's Contribution ("Borrower's Contribution"):**

   a.   At or prior to 504 Loan Closing, Borrower must contribute $420,000.00 to the Project. This amount is 15.00% of the total project cost.

      (1)   Contribution may be in cash, land or other property acceptable to SBA;

      (2)   Contribution may come from Borrower's own resources, CDC, or another source;

      (3)   If any of the contribution is borrowed and secured by any of the Project Property, the resulting obligation must be expressly subordinate to the liens securing the Promissory Note ("Note") in favor of CDC and may not be repaid at a faster rate than the Note unless prior written approval is obtained from SBA. A copy of any debt instrument evidencing the obligation must be supplied to CDC at or prior to 504 Loan Closing.

   b.   **Costs in Excess of Project Cost:** Borrower must pay any costs in excess of the total Project Cost referred to in Paragraph A.2 which Borrower incurs in completing the Project.

   c.   **Closing Costs:** At or prior to 504 Loan Closing, Borrower must pay all closing costs, including but not limited to title insurance premiums, recording costs, and premiums for insurance required by this Authorization.

5. **Borrower's Fees ("Borrower's Fees")—Borrower must pay:**

   a.   An ongoing guarantee fee equal to 0.288 of one percent per annum of the principal balance of the Note calculated at five-year intervals beginning with the first payment. This guarantee fee will be made until the loan is terminated. It will be included with the payment on the Note made each month to the CSA.

   b.   A servicing fee, as stated on the Servicing Agent Agreement at the time of 504 Loan Closing, calculated on the outstanding principal balance at five-year intervals. The fee will be included in the monthly loan installment paid to the CSA.

   c.   A late fee of 5 percent of the late payment or $100.00, whichever is greater, for payments received by the CSA after the 15th day of the month.

6. **CDC Fee**—CDC must pay an ongoing guarantee fee equal to one-eighth of one percent per annum of the principal balance of the Note calculated on the balance outstanding at five-year intervals. It will be deducted from the servicing fee collected monthly by the CSA for the CDC. The CDC will retain a minimum servicing fee as required by SBA regulations and policies.

## C. THE NOTE

At or prior to 504 Loan Closing, the Borrower must execute a Note in favor of CDC. The CDC must assign the Note to SBA. Borrower must make payments by Automated Clearinghouse (ACH) or wire transfer.

The Note and Debenture will include the following terms:

1. **Amount:** $619,000.00

2. **Term:** 20 years

---

3.  **Repayment Terms**:  At the date the Debenture is sold, the interest rate will be set and the amount of the monthly principal and interest installment for the term of the Note and the semi-annual principal and interest installment for the term of the Debenture will be established.

4.  **Prepayment**:  If Borrower prepays during the first half of the stated term, there will be a prepayment premium, calculated by applying a declining percentage of the Debenture interest rate to the outstanding principal balance of the Note.  A schedule of the dollar amount of the premium will be provided after the sale of the Debenture.

    The Borrower may prepay the Note or Lease in full.  Partial prepayment is not allowed. Borrower must pay the sum of:

    a.  all principal and interest payments, servicing-agent fees, and SBA guarantee fees up to and including the date of the next semi-annual debenture payment date;

    b.  all CDC servicing fees that accrue before Borrower prepays;

    c.  all late fees incurred before Borrower prepays;

    d.  all expenses incurred by CDC for which Borrower is responsible;

    e.  the balance owing on the Note as of the next semi-annual debenture payment date; and

    f.  any prepayment premium required under the Note and Debenture.

    To prepay, Borrower must give the CDC at least 45 days prior written notice. At least 10 days before the prepayment date, Borrower must wire a deposit of $1,000 to the Servicing Agent. If the Borrower prepays, the Servicing Agent will apply the deposit to the prepayment. If Borrower does not prepay, the deposit is forfeited. The prepayment must take place on the third Thursday of the month.  If the third Thursday of the month is not a business day, the payment must be made on the next business day.

5.  CDC must include in the Note the following language for residential property located in California securing the Note:

## D.  COLLATERAL CONDITIONS

The Note must be secured by the following collateral. All collateral must be assigned to SBA. CDC must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1.  **Second Deed of Trust (including due on sale clause and assignment of rents) on land and improvements** located at 3600 West Capitol Avenue, West Sacramento CA 95691-2114. This property is commercial.

    a.  Subject only to prior lien(s) as follows:

        (1)  First:  Business Loan Express in the amount of $1,780,000.00

    b.  CDC to file a Request for Notice pursuant to state law.

    c.  Evidence of title and priority of lien must be based upon:

        (1)  ALTA Loan Policy. insuring CDC and assigns. in the amount of $6,240,000. with 100 & 116 endorsements.

    d.  CDC must obtain in recordable form written subordination agreements from any tenants occupying any of the Project real property required as collateral.  Appropriate subordination language may be included in the Lease as an alternative.

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 5
(504 Wizard 2004.2)

    e.   At the time of Closing, either:

      (1)  there must be no contractor's, mechanic's or materialman's lien on the Property, including a lien which might possibly be filed after Closing, which would impair the stated priority of the CDC/SBA lien, and there must be no other circumstances adversely affecting the value of the property; or,

      (2)  no exception for these in the title insurance commitment/policy, or

      (3)  The title insurance company must provide affirmative coverage to CDC and SBA over any such exceptions, affording reasonably adequate protection against material loss arising from such exceptions. In addition, the title insurance company must provide such endorsements as CDC or SBA deems necessary to protect CDC and SBA reasonably against material loss arising from any other exceptions. In states where a survey is customarily provided for title insurance coverage, Borrower must also provide a survey certified to SBA/CDC, or a prior survey acceptable to SBA/CDC and the title insurer and a satisfactory survey affidavit of no change.

2.   **Assignment of Rents from Eligible Passive Company.** CDC must obtain a perfected assignment of all rents paid under the lease on the project property between the Eligible Passive Company and the Operating Company. The term of lease, with options to renew exercisable solely by the Operating Company, must be for at least the term of the Loan. The lease must be subordinate to CDC's Security Interest, Deed of Trust or Mortgage. Lease payments must be no more than is necessary to amortize debt plus pay expenses related to holding the property.

3.   **Guarantee on SBA Form 148,** by Samjin General Supply, Inc., resident in California.

**Assignment to SBA.** CDC must execute a satisfactory written assignment to SBA of its interest in the Note, lease and all collateral documents executed by the Borrower and guarantors.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a)  When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*b)  CDC or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

---

**California Mandatory Provision**—The following language must appear in all guarantees if any borrower or any real estate is located in California:

*"Guarantor waives its rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to the guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.*

*The guarantor waives all rights and defenses that the guarantor may have because the debtor's debt is secured by real property. This means, among other things:*

(1)  *The creditor may collect from the guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.*

(2)  *If the creditor forecloses on any real property collateral pledged by the debtor:*

    (A)  *The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.*

    (B)  *The creditor may collect from the guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the guarantor may have to collect from the debtor.*

*This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.*

*The guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise."*

If Guarantee is secured by Deed of Trust on residential property in California, CDC must also include in the guarantee the following language:

## E.   ADDITIONAL CONDITIONS

### 1.   Insurance Requirements

Prior to 504 Loan Closing, CDC must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

a.   **Flood Insurance.** If FEMA Form 81-93 reveals that any portion of the collateral is located in a special flood hazard zone, CDC must require Borrower to obtain Federal flood insurance, or other appropriate special hazard insurance, in amounts equal to the lesser of the insurable value of the property or the maximum sum of coverage available. Insurance coverage must contain a <u>MORTGAGEE CLAUSE/LENDER'S LOSS PAYABLE CLAUSE</u> (or substantial equivalent) in favor of CDC and SBA. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 7
(504 Wizard 2004.2)

b. **Real Estate Hazard Insurance** coverage on all business real estate that is collateral for the Loan in the amount of the full replacement cost. If full replacement cost insurance is not available, coverage should be for maximum insurable value. Insurance coverage must contain a <u>MORTGAGEE CLAUSE</u> (or substantial equivalent) in favor of CDC and SBA. This clause must provide that any act or neglect of the mortgagor or owner of the insured property will not invalidate the interest of CDC and SBA. The policy or endorsements must provide for at least 10 days prior written notice to CDC of policy cancellation.

2. **Environmental Requirements**

   a. CDC must not close the 504 Loan until it has:

      (1) completed the review for potential environmental contamination required in SOP 50 10(4) ("Environmental Investigation") on each business real property site that is:
         (a) acquired or improved with proceeds from Loan; or
         (b) taken as collateral if the site represents over 50% of the value of all collateral securing the Loan; and

      (2) sufficiently minimized the risk from any adverse environmental findings discovered in the Environmental Investigation, or otherwise, as required by SOP 50 10(4), Subpart A, Chapter 5, Paragraph 7 (Environmental Conditions).

   b. CDC should consult with the local SBA office where the real property collateral is located to ascertain any state or local environmental requirements.

3. **Borrower, Guarantor and Operating Company Documents**

   a. Prior to 504 Loan Closing, CDC must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

      (1) **Corporate Documents**—Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

      (2) **Limited Liability Company (LLC) Documents**—Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

      (3) **General Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

      (4) **Limited Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

      (5) **Limited Liability Partnership (LLP) Documents**—Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

      (6) **Trustee Certification**—A Certificate from the trustee warranting that:
         (a) The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;
         (b) The trustee has authority to act;
         (c) The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;
         (d) If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

    (e)  There is nothing in the trust agreement that would prevent CDC from realizing on any security interest in trust assets;

    (f)  The trust agreement has specific language confirming the above; and

    (g)  The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

  (7)  **Trade Name**—Documentation that Borrower has complied with state requirements for registration of Borrower's or Operating Company's trade name (or fictitious name), if one is used.

b.  Prior to 504 Loan Closing, CDC must obtain from Borrower and Operating Company:

  (1)  **Ownership**—Evidence that ownership and management have not changed without CDC's approval since the application was submitted.

## 4.  Operating Information

Prior to 504 Loan Closing, CDC must obtain:

a.  **Verification of Financial Information**—CDC must submit IRS Form 4506-T (SBA version) to the Internal Revenue Service to obtain federal income tax information on Borrower or, if Borrower is an EPC, then the Operating Company, for the last 3 years (unless Borrower or Operating Company is a start-up business). If the business has been operating for less than 3 years, CDC must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application. CDC must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of CDC and SBA. Failure to resolve differences may result in cancellation of the Loan.

If the Loan involves purchase of a business or change of ownership, CDC must verify financial information provided by the seller of the business in the same manner as above.

If CDC does not receive a response from the IRS within 10 business days of submitting the IRS Form 4506-T, then CDC may close the 504 Loan prior to completing this verification, provided that CDC has submitted IRS Form 4506-T to the IRS no later than 10 business days from the date of this Authorization. At the time the information is received, CDC must still perform the verification and resolve any significant differences discovered, even if the loan is fully disbursed.

b.  **Authority to Conduct Business**—Evidence that the Borrower and Operating Company have an Employer Identification Number and any authorization necessary to legally operate the business.

c.  **Flood Hazard Determination**—A completed Standard Flood Hazard Determination (FEMA Form 81-93).

## 5.  Certifications and Agreements

a.  At or prior to 504 Loan Closing, CDC must require Borrower and Operating Company to certify that:

  (1)  **No Adverse Change**—Since the date of application there has been no unremedied substantial adverse change in the financial condition of Borrower and Operating Company or their ability to repay the Project financing, including the Note. Borrower

and Operating Company must also supply to CDC accurate financial statements, current within 120 days of 504 Loan Closing.

(2) **Child Support**—No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(3) **Current Taxes**—Borrower and Operating Company are current on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

(4) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower or Operating Company are conducting business operations (collectively "the Property"):

    (a) At the time Borrower and Operating Company submitted the Loan application, Borrower and Operating Company were in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment ("Contaminant"), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

    (b) Borrower and Operating Company will continue to comply with these laws and regulations;

    (c) Borrower and Operating Company, and all of its principals, have no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;

    (d) Until full repayment of the Loan, Borrower and Operating Company will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or Operating Company or such Property is subject to any investigation or enforcement action by any federal, state, or local environmental agency ("Agency") pertaining to any Contaminant on, at, or under such Property, including groundwater;

    (e) As to any Property owned by Borrower and Operating Company, Borrower and Operating Company indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's or Operating Company's were operations. (Lender or SBA may require Borrower or Operating Company to execute a separate indemnification agreement).

b. At or prior to 504 Loan Closing, CDC must require Borrower and Operating Company to certify that they will:

(1) **Reimbursable Expenses**—Reimburse CDC for expenses incurred in the making and administration of the Loan.

(2) **Books, Records, and Reports**-

    (a) Keep proper books of account in a manner satisfactory to CDC;

    (b) Furnish year-end statements to CDC within 120 days of fiscal year end;

    (c) Furnish additional financial statements or reports whenever CDC requests them;

---

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 10
(504 Wizard 2004.2)

   (d)  Allow CDC or SBA, at Borrower's or Operating Company's expense, to:
       [1]  Inspect and audit books, records and papers relating to Borrower's and Operating Company's financial or business condition; and
       [2]  Inspect and appraise any of Borrower's and Operating Company's assets; and
       [3]  Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower and Operating Company, upon request by CDC or SBA.

   (3)  **Equal Opportunity**—Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public, and comply with the requirements of SBA Form 793, Notice to New SBA Borrowers.

   (4)  **American-made Products**—To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

   (5)  **Taxes**—Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

   (6)  **Occupancy**—Comply with the following provisions: (a) Borrower must lease 100% of the Rentable Property to Operating Company; (b) Operating Company may sublease up to 49% of the Rentable Property; (c) Borrower will not use Loan proceeds to improve or renovate any of the property to be sub-leased.

 c.  Prior to 504 Loan Closing, CDC must require Borrower and Operating Company to certify that they will not, without prior written consent of CDC and SBA:

   (1)  **Distributions**—Make any distribution of company assets that will adversely affect the financial condition of Borrower and/or Operating Company.

   (2)  **Ownership Changes**—Change the ownership structure or interests in the business during the term of the Note, provided that, commencing six months after the Debenture sale, Borrower or Operating Company may have one or more changes in ownership without approval of SBA so long as the cumulative change over the term of the Note is less than five percent (5%).

   (3)  **Transfer of Assets**—Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

   (4)  **Conflict**—Or any of its affiliates acquire, directly or indirectly, in excess of a 10% ownership or interest in CDC during the term of the Debenture. If this type of acquisition occurs the Debenture will immediately become due and payable in full.

## F.  DEBENTURE SALE CONDITIONS

1.  SBA will not authorize the sale of the Debenture until SBA is satisfied that:

  a.  there has been no unremedied adverse change in the financial condition, organization, management, operations, or assets of Borrower and Operating Company;

  b.  all the terms and conditions of this Authorization have been met, and;

  c.  Borrower, Operating Company and the CDC have complied with their responsibilities as listed below.

2.  IT IS BORROWER'S RESPONSIBILITY TO:

  a.  Comply with other conditions, outside the Authorization, that are reasonably imposed by CDC.

SBA Loan Number: PCL 905-607-4005
SBA Loan Name: Samjin General Supply, Inc.

Page 11
(504 Wizard 2004.2)

    b.    Cooperate fully with CDC and SBA in closing the 504 Loan and obtaining necessary certifications and documents.

    c.    Comply with the closing instructions provided by CDC and SBA.

    d.    Execute all documents required by CDC and SBA. All documents required to be produced by the Borrower must be satisfactory to SBA in form and substance.

    e.    Submit all required documents to CDC counsel sufficiently in advance of 504 Loan Closing (as directed by CDC counsel).

    f.    Certify that all elements of Project Costs have been paid in full and how they were paid.

    g.    Certify that any bankruptcy or insolvency proceeding involving, or pending lawsuit against, Borrower, Operating Company or any of their principals has been disclosed in writing to CDC.

3.    IT IS CDC'S RESPONSIBILITY TO:

    a.    Close the 504 Loan in accordance with the terms and conditions of this Authorization.

    b.    Obtain valid and enforceable Loan documents and all required lien positions. This includes obtaining the signatures or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.

    c.    Obtain all necessary certifications.

    d.    Obtain a legal opinion from CDC counsel or Borrower's counsel if there is one, acceptable to CDC and SBA, verifying:

        (1)    that all Borrower or guarantor entities (other than natural persons) are properly organized, in good standing, validly existing, and have the authority to borrow or guarantee;

        (2)    that the documents executed by the Borrower and guarantors have been authorized, executed, and delivered by an authorized person, and are valid and binding obligations, enforceable in accordance with their respective terms; and

        (3)    opinions as to such other matters as CDC and SBA may require.

    e.    Certify to SBA that there has been no substantial unremedied adverse change in the Borrower's or Operating Company's or Operating Company's financial condition, organization, operation, or assets, as set forth on the CDC Certification (SBA Form 2101).

    f.    Certify that all elements of Project Costs have been paid in full and that the Interim Lender, Third Party Lender, Borrower, and CDC have each contributed to the Project in the amount and manner authorized by SBA.

    g.    Properly complete all closing documents using SBA Required Forms. CDC may use its own forms except as otherwise instructed in this Authorization. CDC must use the following forms for the Loan:

                Opinion of CDC Counsel (Appendix D to the National 504 Authorization Boilerplate)
                SBA Form 2101, CDC Certification
                SBA Form 1505, SBA Note
                SBA Form 1504, Debenture
                SBA Form 159, Compensation Agreement, for each representative

---

SBA Form 1528, CDC Board Resolution
SBA Form 1506, Servicing Agent Agreement
SBA Form 722, Equal Opportunity Poster
SBA Form 793, Notice to New Borrowers
SBA Form 148, Guarantee
IRS Form W-9

CDC may use computer-generated versions of mandatory SBA Forms, as long as these versions are exact reproductions.

h.   Submit these documents as well as other required documents and copies, such as a Closing Checklist and Collateral Listing, to SBA for review and Debenture sale by the deadlines established by SBA.

4.   **Compensation Agreement.** At Closing, CDC and Borrower must provide an SBA Form 159 from each agent (including an attorney, accountant, consultant, manufacturer's representative, packager, lender service provider, or any other person representing a Borrower or CDC) that assisted the Borrower to obtain the 504 loan, indicating the amount of each fee.

5.   **Completion of Debenture and Note Terms.** Borrower, Operating Company and CDC authorize CDC, SBA and/or CSA to date and otherwise complete any terms of the Debenture, Note, or Loan Documents which were incomplete at the time of their execution as soon as such terms become known to them.

ADMINISTRATOR
SMALL BUSINESS ADMINISTRATION

August 22, 2005

By:   Frank F. Dinsmore, Chief Executive Officer,                    Date
a Premier CDC, for CDC and as an agent of and on behalf of the SBA for the purpose of executing this Authorization.

## ACCEPTANCE BY BORROWER, OPERATING COMPANY AND CDC:

In consideration for the provision by SBA of financial assistance to CDC for the benefit of Borrower, and intending to be bound, Borrower, Operating Company and CDC accept and agree to comply fully with the terms and conditions of this Authorization for Debenture Guarantee. Each person signing below represents and warrants that he or she is fully authorized to execute this Authorization in the capacity indicated.

CDC, Borrower and Operating Company must confirm their receipt of these terms and conditions by signing this Authorization and returning it to this District Office within ten (10) days after receiving it.

The terms and conditions of this Authorization survive 504 Loan Closing and Debenture sale.

**BORROWERS:**

_____     9-23-05
Mason Au                                     Date

_____     9-23-05
Nanjoo Au                                    Date


**OPERATING COMPANY:**

Samjin General Supply, Inc.

_____     9-23-05
By: Mason Au, President                      Date

_____     9-23-05
By: ~~Mason Au~~, Secretary                  Date
Nanjoo Au


**GUARANTOR**

Samjin General Supply, Inc.

_____     9-23-05
By: ~~Mason Au~~, President                  Date

_____     9-23-05
(~~By: Mason Au~~), Secretary                Date
Nanjoo Au


---

SBA Loan Number: PCL 905-607-4005                          Page 14
SBA Loan Name: Samjin General Supply, Inc.            (504 Wizard 2004.2)



# RESOURCE CAPITAL
*Real Estate Financing for Growing Businesses*

October 3, 2005                    SEE ATTACHED WORKSHEET FIRST

Attn: Robert Stitt
U.S. Small Business Administration
650 Capitol Mall, Suite 7-500
Sacramento, CA 95814

Re: Samjin General Supply, Inc.
SBA Loan No: PCL 905-607-4005

This letter is a modification of the Authorization for Debenture Guaranty for the above referenced loan. The changes are as follows:

1.  Change paragraph A.2 to read:

    2.  **Project Costs ("Project Costs")** include:

        | | | |
        |---|---|---|
        | a. | Purchase Land | $0.00 |
        | b. | Purchase Land and Building | $2,839,244.00 |
        | c. | Construction/Remodeling | $0.00 |
        | d. | Purchase/Install Equipment | $0.00 |
        | e. | Purchase/Install Fixtures | $0.00 |
        | f. | Professional Fees | $0.00 |
        | g. | Other Expenses | $0.00 |
        | | | |
        | h. | Total Project Cost | $2,839,244.00 |

2.  Change paragraph B.1.a. to read: ...and the final 21.13% of the total Project Cost.

    a.    SBA/CDC Share: 21.13% of the total Project Cost.

3.  Change paragraph B.3.a. to read:

    a.  BLX Capital LLC ("Third Party Lender") will provide permanent project financing in the amount of $1,780,000.00 ("Third Party Lender Loan"). This amount is 62.69% of the total project cost.

*Michigan Office:*
17177 N. Laurel Park Drive, Suite 360
Livonia, Michigan 48152
734.464.4418   *fax* 464.4419

*California Office:*
7509 Madison Avenue, Suite 111
Citrus Heights, California 95610
916.962.3669   *fax* 962.1822

*toll free* 877.617.6781
*email* info@resoureccapital.com

4. Change paragraph B.4.a. to read:

    a.    At or prior to 504 Loan Closing, Borrower must contribute $459,244.00 to the Project. This amount is 16.17% of the total project cost.

Please acknowledge receipt of this modification as soon as possible.

Sincerely,                ACKNOWLEDGED:

                              See Attached

Frank F. Dinsmore
Chief Executive Officer

DP

2

Worksheet for October 3, 2005 request
Samjin General Supply, Inc.
Page 2

Request changes in order to reflect actual project costs and borrower contribution as
evidenced.

ACKNOWLEDGED:

BORROWERS:

_____
Mason Au

_____
Nanjoo Au

OPERATING COMPANY:

Samjin General Supply, Inc.

By: _____
Mason Au, President

By: _____
Mason Au, Secretary
Nanjoo

GUARANTOR:

Samjin General Supply, Inc.

By: _____
Mason Au, President

By: _____
Mason Au, Secretary
Nanjoo



**RESOURCE CAPITAL**
*Real Estate Financing for Growing Businesses*

September 19, 2005                    SEE ATTACHED WORKSHEET FIRST

U.S. Small Business Administration
650 Capitol Mall, Suite 7-500
Sacramento, CA 95814

Re:    Samjin General Supply, Inc.
       SBA Loan No: PCL 905-607-4005

This letter is a modification of the Authorization for Debenture Guaranty for the above referenced loan.  The changes are as follows:

1.    Change the name of the Third Party Lender and the name of the Interim Lender from "Business Loan Express" to "BLX Capital LLC" throughout the Authorization wherever applicable.

Please acknowledge receipt of this modification as soon as possible.

Sincerely,                           ACKNOWLEDGED:  See Attached

Frank F. Dinsmore
Chief Executive Officer

*Michigan Office:*
17177 N. Laurel Park Drive, Suite 360
Livonia, Michigan 48152
734.464.4418   fax 464.4419

*California Office:*
7509 Madison Avenue, Suite 111
Citrus Heights, California 95610
916.962.3669   fax 962.1822

*toll free* 877.617.6781
*email:* info@resourcecapital.com

Worksheet for  September 19, 2005 request
Samjin General Supply, Inc.
Page 2

Request changes in order to reflect the actual lender names.

ACKNOWLEDGED:

BORROWERS:

_____
Mason Au

_____
Nanjoo Au


OPERATING COMPANY:

Samjin General Supply, Inc.

By: _____
Mason Au, President

By: _____
Mason Au, Secretary
of Nanjoo

GUARANTOR:

Samjin General Supply, Inc.

By: _____
Mason Au, President

By: _____
Mason Au, Secretary
Nanjoo



# REsource Capital

*Real Estate Financing for Growing Businesses*

October 3, 2005                              SEE ATTACHED WORKSHEET FIRST

Attn: Robert Stitt
U.S. Small Business Administration
650 Capitol Mall, Suite 7-500
Sacramento, CA 95814

Re:  Samjin General Supply, Inc.
SBA Loan No:  PCL 905-607-4005

This letter is a modification of the Authorization for Debenture Guaranty for the above
referenced loan.  The changes are as follows:

1.   Change paragraph A.2 to read:

2.   **Project Costs ("Project Costs")** include:

| | | |
|---|---|---|
| a. | Purchase Land | $0.00 |
| b. | Purchase Land and Building | $2,839,244.00 |
| c. | Construction/Remodeling | $0.00 |
| d. | Purchase/Install Equipment | $0.00 |
| e. | Purchase/Install Fixtures | $0.00 |
| f. | Professional Fees | $0.00 |
| g. | Other Expenses | $0.00 |
| h. | Total Project Cost | $2,839,244.00 |

2.   Change paragraph B.1.a. to read: …and the final 21.13% of the total Project Cost.

a.      SBA/CDC Share: 21.13% of the total Project Cost.

3.   Change paragraph B.3.a. to read:

a.   BLX Capital LLC ("Third Party Lender") will provide permanent project
financing in the amount of $1,780,000.00 ("Third Party Lender Loan").  This
amount is 62.69% of the total project cost.

*Michigan Office:*
17177 N. Laurel Park Drive, Suite 360
Livonia, Michigan 48152
734.464.4418   *fax* 464.4419

*California Office:*
7509 Madison Avenue, Suite 111
Citrus Heights, California 95610
916.962.3669   *fax* 962.1822

*toll free* 877.617.6781
*email:* info@resourceccapital.com

4. Change paragraph B.4.a. to read:

    a.    At or prior to 504 Loan Closing, Borrower must contribute $459,244.00 to the Project.  This amount is 16.17% of the total project cost.

Please acknowledge receipt of this modification as soon as possible.

Sincerely,                ACKNOWLEDGED:

                                See Attached

Frank F. Dinsmore
Chief Executive Officer

DP

2

Worksheet for October 3, 2005 request
Samjin General Supply, Inc.
Page 2

Request changes in order to reflect actual project costs and borrower contribution as
evidenced.

3

ACKNOWLEDGED:

BORROWERS:

_____
Mason Au

_____
Nanjoo Au


OPERATING COMPANY:

Samjin General Supply, Inc.

By: _____
      Mason Au, President

By: _____
      Mason Au, Secretary
      Nanjoo


GUARANTOR:

Samjin General Supply, Inc.

By: _____
      Mason Au, President

By: _____
      Mason Au, Secretary
      Nanjoo



RESOURCE CAPITAL
*Real Estate Financing for Growing Businesses*

September 19, 2005                     SEE ATTACHED WORKSHEET FIRST

U.S. Small Business Administration
650 Capitol Mall, Suite 7-500
Sacramento, CA 95814

Re:     Samjin General Supply, Inc.
        SBA Loan No: PCL 905-607-4005

This letter is a modification of the Authorization for Debenture Guaranty for the above
referenced loan.  The changes are as follows:

1.    Change the name of the Third Party Lender and the name of the Interim Lender
from "Business Loan Express" to "BLX Capital LLC" throughout the Authorization
wherever applicable.

Please acknowledge receipt of this modification as soon as possible.

Sincerely,                        ACKNOWLEDGED:  See Attached

Frank F. Dinsmore
Chief Executive Officer

*Michigan Office:*
17177 N. Laurel Park Drive, Suite 360
Livonia, Michigan 48152
734.464.4418   *fax* 464.4419

*California Office:*
7509 Madison Avenue, Suite 111
Citrus Heights, California 95610
916.962.3669   *fax* 962.1822

*toll free* 877.617.6781
*email* info@resourcecapital.com

Worksheet for  September 19, 2005 request
Samjin General Supply, Inc.
Page 2


Request changes in order to reflect the actual lender names.

ACKNOWLEDGED:

BORROWERS:

_____
Mason Au

_____
Nanjoo Au

OPERATING COMPANY:

Samjin General Supply, Inc.

By: _____
     Mason Au, President

By: _____
     Mason Au, Secretary
     Nanjoo

GUARANTOR:

Samjin General Supply, Inc.

By: _____
     Mason Au, President

By: _____
     Mason Au, Secretary
     Nanjoo

# Exhibit B



U.S. Small Business Administration

# U.S. Small Business Administration

## NOTE
## (CDC/504 LOANS)

| | |
|---|---|
| SBA Loan # | **PCL 905-607-4005** |
| SBA Loan Name | **Samjin General Supply, Inc.** |
| Date | **September 14, 2005** |
| Loan Amount | **$ 619,000.00** |
| Borrower | **Mason Au and Nanjoo Au** |
| Operating Company | **Samjin General Supply, Inc.** |
| CDC | **EDF RESOURCE CAPITAL, INC.**       **09-111** |

Funding Date: **December 14, 2005**

First Payment Due: **January 01, 2006**

Note Maturity Date: **December 01, 2025**

\* Interest Rate: _____ %

\* P&I Amount: $_____

\* Monthly Payment: $_____

*( \* blank at signing )*

1. PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of CDC the amount of
    **Six Hundred Nineteen Thousand and no/100** _____ Dollars,

    interest on the unpaid principal balance, the fees specified in the Servicing Agent Agreement, and all other amounts required by this Note.

2. DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Debenture" means the debenture issued by CDC to fund the Loan.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

    "Servicing Agent Agreement" means the agreement between the Borrower and the CDC that, among other things, appoints a servicing agent ("Servicing Agent") for this Note.

3.   INTEREST RATE AND PAYMENT:

The terms of the Debenture sale will establish the interest rate, P & I amount, and Monthly Payment for this Note. Borrower acknowledges that these terms are unknown when Borrower signs this Note.

    A.   Once established, the interest rate is fixed. Interest begins to accrue on the Funding Date.

    B.   Monthly Payments are due on the first business day of each month, beginning on the First Payment Due and continuing until the Note Maturity Date, when all unpaid amounts will be due. Borrower must pay at the place and by the method the Servicing Agent or CDC designates. The Monthly Payment includes the monthly principal and interest installment (P & I Amount), and the monthly fees in the Servicing Agent Agreement. The Servicing Agent will apply regular Monthly Payments in the following order: 1) monthly fees, 2) accrued interest, and 3) principal.

4.   LATE-PAYMENT FEE:

CDC charges a late fee if the Servicing Agent receives a Monthly Payment after the fifteenth day of the month when it is due. The late fee is five percent of the payment amount, or $100.00, whichever is greater. The late fee is in addition to the regular Monthly Payment.

5.   RIGHT TO PREPAY:

Borrower may prepay this Note in full on a specific date each month set by the Servicing Agent. Borrower may not make partial prepayments. Borrower must give CDC at least 45 days' prior written notice. When it receives the notice, CDC will give Borrower prepayment instructions. At least 10 days before the payment date, Borrower must wire a non-refundable deposit of $1,000 to the Servicing Agent. The Servicing Agent will apply the deposit to the prepayment if Borrower prepays. In any prepayment, Borrower must pay the sum of all of the following amounts due and owing through the date of the next semi-annual Debenture payment:

    A.   Principal balance;
    B.   Interest;
    C.   SBA guarantee fees;
    D.   Servicing agent fees;
    E.   CDC servicing fees;
    F.   Late fees;
    G.   Expenses incurred by CDC for which Borrower is responsible; and
    H.   Any prepayment premium.

6.   PREPAYMENT PREMIUM:

If Borrower prepays during the first half of the Note term, Borrower must pay a prepayment premium. The formula for the prepayment premium is specified in the Debenture and may be obtained from CDC.

7.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    A.   Fails to do anything required by this Note and other Loan Documents;
    B.   Defaults on any other loan made or guaranteed by SBA;
    C.   Does not preserve or account to CDC's satisfaction for any of the Collateral or its proceeds;
    D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to CDC or SBA;
    E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to CDC or SBA;
    F.   Defaults on any loan or agreement with another creditor, if CDC believes the default may materially affect Borrower's ability to pay this Note;
    G.   Fails to pay any taxes when due;
    H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;
    I.   Has a receiver or liquidator appointed for any part of their business or property;
    J.   Makes an assignment for the benefit of creditors;
    K.   Has any adverse change in financial condition or business operation that CDC believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without CDC's prior written consent, or sells or transfers more than ██████ percent of the voting rights, thus affecting the loan class; or

M. Becomes the subject of a civil or criminal action that CDC believes may materially affect Borrower's ability to pay this Note.

## 8. CDC'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, CDC may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgement;

D. Take possession of any Collateral; and

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

## 9. CDC'S GENERAL POWERS:

Without notice and without Borrower's consent, CDC may:

A. Bid or buy at any sale of Collateral by Lender or another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If CDC incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

## 10. FEDERAL LAW:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. CDC or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 11. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and CDC includes it successors and assigns.

## 12. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower authorizes CDC, the Servicing Agent, or SBA to complete any blank terms in this Note and any other Loan Documents. The completed terms will bind Borrower as if they were completed prior to this Note being signed.

C. Borrower waives all suretyship defenses.

D. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable CDC to acquire, perfect, or maintain CDC's liens on Collateral.

E. CDC may exercise any of its rights separately or together, as many times and in any order it chooses. CDC may delay or forgo enforcing any of its rights without giving any up.

F. Borrower may not use any oral statement to contradict or alter the written terms of, or raise a defense to, this Note.

G. If any part of this Note is unenforceable, all other parts remain in effect.

H. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that CDC did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

13. STATE-SPECIFIC PROVISIONS:

NONE

14. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

_____

**Mason Au**

_____

**Nanjoo Au**

ASSIGNMENT: CDC assigns this Note to SBA.
   **EDF RESOURCE CAPITAL, INC.**

By: _____                    Date: **September 14, 2005**

Typed Name: **Frank F. Dinsmore, Chief Executive Officer** _____ , authorized officer of CDC.

Attest: _____

   **Michael A. Cross, Secretary**

SBA Form 1505 (10/98)  Previous editions obsolete                              Page 5/5

# Exhibit C

Order No.
Escrow No.
Loan No. PCL 905-607-4005

WHEN RECORDED MAIL TO:

Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Avenue, Ste. 111
Citrus Heights, CA 95610

YOLO Recorder's Office
Freddie Oakley, County Recorder
**DOC- 2005-0048145-00**
Acct 183-First American Title
Tuesday, SEP 27, 2005 14:44:06
Ttl Pd $28.00              Nbr-0000535743
                           VRB/R6/2-5

SPACE ABOVE THIS LINE FOR RECORDER'S USE

This Deed of Trust, Third and subordinate to Second Deed of Trust for $600,000 subordinate to Deed of Trust for $1,780,000

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (This Deed of Trust contains an acceleration clause)

This DEED OF TRUST, made September 14, 2005, between Mason Au and Nanjoo Au, herein called TRUSTOR, whose address is 3600 West Capitol Avenue, West Sacramento, CA 95691, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, herein called TRUSTEE, and EDF RESOURCE CAPITAL, INC., herein called BENEFICIARY,

WITNESSETH: That Trustor does hereby give, grant, bargain, sell, warrant, convey, mortgage, transfer, grant a security interest in, set over, deliver, confirm and convey unto Trustee, in Trust, with Power of Sale and right of entry upon the terms and conditions of this Deed of Trust that property in the County of Yolo, State of California, as described in Exhibit A incorporated herein by reference, together with all buildings, structures, facilities and other improvements now or hereafter located on the property, and all building material, building equipment, supplies and fixtures of every kind and nature now or hereafter located on the property or attached to, contained in or used in connection with any such buildings, structures, facilities or other improvements, and all appurtenances and additions thereto and betterments, renewals, substitutions and replacements thereof, and the rents, issues and profits of all of the foregoing, owned by Trustor or in which Trustor has or shall acquire an interest, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits for the purpose of securing (1) payment of the sum of $619,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof, (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

If the Trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, Beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A, and it is mutually agreed that each and all of the terms and provisions set forth in subdivision B of the fictitious deed of trust recorded in Orange County August 17, 1964, and in all other counties August 18, 1964, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 36 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 5039 | 124 | Sonoma | 2097 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 5213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 96 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1176 | 78 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego | SERIES 5 Book 1964 Page 149774 | | | | |

1073



048145 SEP 27 &

EXHIBIT E

DEED OF TRUST
(Continued)

PAGE 2

Shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said Subdivision A and B, (identical in all counties, and printed on pages 3 and 4 hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) CDC or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

TRUSTOR:

_____

**Mason Au**

_____

**Nanjoo Au**

STATE OF CALIFORNIA                    )ss.
COUNTY OF Sacramento )

On September 23, 2005 before me, V. Bressman
personally appeared Mason Au + Nanjoo Au _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

V. BRESSMAN
COMM # 1557360
NOTARY PUBLIC CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. JAN 3 2008

(Seal)

Deed of Trust with Assignment of Rents       **PAGE 3**
(Continued)

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A.  To protect the security of this Deed of Trust, Trustor agrees:

(1)      To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)      To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)      To pay at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.  It is mutually agreed:

(1)      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby Trustee may: reconvey any part of said property; consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)      That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as A/the person or persons legally entitled thereto[.]

(5)      That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby, or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)      That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

10737

048145  SEP 27 '05

4

iption: Yolo,CA Document-Year.DocID 2005.48145 Page: 4 of 5
: 3 Comment:

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor, Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires  the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

---

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

TO _____ Trustee

The undersigned is the legal owner and holder of the note or notes, and all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated: _____

Please mail Deed of Trust,
Note and Reconveyance to

**END OF DOCUMENT**

048145 SEP 27 '05

5

# Exhibit D



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PCL 905-607-4005 | |
|---|---|---|
| SBA Loan Name | Samjin General Supply, Inc. | |
| Guarantor | Samjin General Supply, Inc. | |
| Borrower | Mason Au and Nanjoo Au | |
| Lender | EDF RESOURCE CAPITAL, INC. | 09-111 |
| Date | September 14, 2005 | |
| Note Amount | $ 619,000.00 | |

1.  **GUARANTEE:**

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

    The "Note" is the promissory note dated <u>September 14, 2005</u> in the principal amount of <u>Six Hundred Nineteen Thousand and no/100</u> Dollars,

    from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  **DEFINITIONS:**

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.  FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes successors and assigns.

9.   GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES.  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR.  Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS.  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY.  All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING.  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS.  Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED.  Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING.  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY.  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION.  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Guarantor waives its rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to the guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive.

Guarantor waives all rights and defenses that the guarantor may have because the debtor's debt is secured by real property. This means, among other things:

1. The creditor may collect from the guarantor without first foreclosing on the real or personal property collateral pledged by the debtor.
2. If the creditor forecloses on any real property collateral pledged by the debtor:
a) The amount of the debt may be reduced by only the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.
b) The creditor may collect from the guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the guarantor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by operation of Section 580d of the Code of Civil Procedure or otherwise.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Samjin General Supply, Inc.

By: _____
       Mason Au, President

By: _____
       ~~Mason Au~~, Secretary
       Nanjoo

ASSIGNMENT:

CDC assigns this Guarantee to SBA.

EDF RESOURCE CAPITAL, INC.

By: _____          Attest: _____
       Frank F. Dinsmore, Chief Executive Officer                Michael A. Cross, Secretary

Date: September 14, 2005

# Exhibit E

Order No.
Escrow No.
Loan No.  PCL 905-607-4005

WHEN RECORDED MAIL TO:

Amy Pietrucha
EDF RESOURCE CAPITAL, INC.
7509 Madison Ave., Ste. 111
Citrus Heights  CA  95610

YOLO Recorder's Office
Freddie Oakley, County Recorder
DOC- 2005-0048146-00
Acct 103-First American Title
Tuesday, SEP 27, 2005 14:44:00
Ttl Pd    $12.00       Nbr-0001565744
                        VRB/R6/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to: the U.S. Small Business Administration

all beneficial interest under that certain Deed of Trust dated  September 14, 2005
executed by  Mason Au and Kamjoo Au

                                                                    . Trustor,

to  First American Title Insurance Company, a California corporation

                                                                    . Trustee

and recorded concurrently herewith as document No. 2005-48145 , In Book                     . Page
of Official Records in the office of the County Recorder of    Yolo                     , County, California, describing
land therein as:

              Attached Exhibit 'A' incorporated herein by reference

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights
accrued or to accrue under said Deed of Trust.

Dated  September 14, 2005

STATE OF CALIFORNIA                               }
COUNTY OF SACRAMENTO                              }ss.
On  September 14, 2005                            } before
me,   the undersigned
personally appeared   Frank F. Dinsmore

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal

Signature

EDF RESOURCE CAPITAL, INC.

By

        Frank F. Dinsmore, Chief Executive Officer

AMY L. PIETRUCHA
Commission # 1529966
Notary Public - California
Sacramento County
My Comm. Expires Nov 26, 2008

(2)

048146 SEP 27 05

## EXHIBIT A

Real property in the City of West Sacramento, County of Yolo, State of California, described as follows:

A PORTION OF SWAMP LAND SURVEY NO. 263, YOLO COUNTY SURVEYS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHERLY LINE OF "SUTTER GARDEN ACRES", FILE IN BOOK 3 OF MAPS, PAGE 58, YOLO COUNTY RECORDS, FROM WHICH SAID POINT OF BEGINNING THE NORTHEASTERLY CORNER OF SWAMP LAND SURVEY NO. 263 BEARS NORTH 89° 28' EAST 681.23 FEET, AND RUNNING THENCE FROM SAID POINT OF BEGINNING SOUTH 0° 26' EAST 799.63 FEET TO A POINT IN THE NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING SOUTH 0° 26' EAST 50.14 FEET TO A POINT IN THE CENTER LINE OF SAID CALIFORNIA STATE HIGHWAY RIGHT OF WAY; THENCE FOLLOWING THE SAID CENTERLINE OF THE CALIFORNIA STATE HIGHWAY RIGHT OF WAY, SOUTH 85° 50' WEST 369.37 FEET; THENCE NORTH 50.14 FEET TO A POINT IN THE AFORESAID NORTHERLY RIGHT OF WAY LINE OF THE CALIFORNIA STATE HIGHWAY; THENCE CONTINUING NORTH 823.07 FEET TO A POINT AT THE SOUTHWEST CORNER OF LOT 5 OF AFORESAID "SUTTER GARDEN ACRES"; THENCE NORTH 89° 28' EAST 361.97 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM, THAT PORTION THEREOF DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 30, 1964 IN BOOK 763 OF OFFICIAL RECORDS, PAGE 595.

APN: 008-030-13-1

# Exhibit F



# RESOURCE CAPITAL
*Real Estate Financing for Growing Businesses*

August 14, 2009

Mason Au
816 Blair Avenue
Piedmont, CA  94611

Re:     DEMAND FOR DEFICIENCY BALANCE DUE ON SBA 504 LOAN
        Loan #: PCL 905-607-4005
        Small Business Concern: Samjin Genera Supply

Dear Mason:

We are writing in regard to the deficiency balance now due on your "SBA 504 loan".  As we understand the situation, the 1st mortgage holder has foreclosed upon the property held as collateral for this loan.

The deficiency balance has now been determined, and the amount that remains due and payable on your loan is $562,222.78 plus interest in the amount of $21,462.97 through August 12, 2009.

Please contact our office immediately to make arrangements for payment of the remaining outstanding deficiency balance.  Also, we will need the attached documents completed and returned to our office for review no later than August 26, 2009.  Should you not contact our office and make satisfactory arrangements, the deficiency balance remaining on this loan will be referred to the Internal Revenue Service for collection.

Your may reach Kim Ioanidis, at #(916) 962-3669, extension 111.  Resource Capital may be able to negotiate with you a payment schedule, a lump sum payment, or other orderly resolution of this matter.

                    Very truly yours,
                    EDF REsource Capital, Inc.

                    Frank F. Dinsmore,
                    Chief Executive Officer

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To **Mason Au**
Street, Apt. No.; or PO Box No. **816 Blair Ave**
City, State, ZIP+4 **Piedmont, CA 94611**

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8831 5735

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To **Nanjoo Au**
Street, Apt. No.; or PO Box No. **816 Blair Ave**
City, State, ZIP+4 **Piedmont, CA 94611**

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8831 5206

# Exhibit G



# REsource Capital
*Real Estate Financing for Growing Businesses*

August 14, 2009

Nanjoo Au
816 Blair Avenue
Piedmont, CA 94611

Re:   DEMAND FOR DEFICIENCY BALANCE DUE ON SBA 504 LOAN
      Loan #: PCL 905-607-4005
      Small Business Concern: Samjin Genera Supply

Dear Nanjoo:

We are writing in regard to the deficiency balance now due on your "SBA 504 loan". As we understand the situation, the 1st mortgage holder has foreclosed upon the property held as collateral for this loan.

The deficiency balance has now been determined, and the amount that remains due and payable on your loan is $562,222.78 plus interest in the amount of $21,462.97 through August 12, 2009.

Please contact our office immediately to make arrangements for payment of the remaining outstanding deficiency balance. Also, we will need the attached documents completed and returned to our office for review no later than August 26, 2009. Should you not contact our office and make satisfactory arrangements, the deficiency balance remaining on this loan will be referred to the Internal Revenue Service for collection.

Your may reach Kim Ioanidis, at #(916) 962-3669, extension 111. Resource Capital may be able to negotiate with you a payment schedule, a lump sum payment, or other orderly resolution of this matter.

Very truly yours,
EDF REsource Capital, Inc.

Frank F. Dinsmore,
Chief Executive Officer

1050 Iron Point Road
Folsom, California 95630
office 916 962.3669
fax 916 962.1822
toll free 877 617.6781

File # 1366

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
MASON AU
Street, Apt. No.; or PO Box No.
816 Blair Ave
City, State, ZIP+4
Piedmont, CA 94611

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8431 5213

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To
NANJOD AU
Street, Apt. No.; or PO Box No.
816 Blair Ave
City, State, ZIP+4
Piedmont, CA 94611

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8431 5206

# Exhibit H



# REsource Capital
*Real Estate Financing for Growing Businesses*

August 12, 2009

Samjin General Supply, Inc.
Mason Au, President
Nanjoo Au, Secretary
3600 West Capitol Avenue
West Sacramento, CA 95691-2114

Re:   DEMAND FOR DEFICIENCY BALANCE DUE ON SBA 504 LOAN
      Loan #: PCL 905-607-4005
      Small Business Concern: Samjin Genera Supply

Dear Mason and Nanjoo Au:

We are writing in regard to the deficiency balance now due on your "SBA 504 loan". As we understand the situation, the 1st mortgage holder has foreclosed upon the property held as collateral for this loan.

The deficiency balance has now been determined, and the amount that remains due and payable on your loan is $562,222.78 plus interest in the amount of $21,462.97 through today, August 12, 2009.

Please contact our office immediately to make arrangements for payment of the remaining outstanding deficiency balance. Also, we will need the attached documents completed and returned to our office for review no later than August 26, 2009. Should you not contact our office and make satisfactory arrangements, the deficiency balance remaining on this loan will be referred to the Internal Revenue Service for collection.

Your may reach Kim Ioanidis, at #(916) 962-3669, extension 111. Resource Capital may be able to negotiate with you a payment schedule, a lump sum payment, or other orderly resolution of this matter.

Very truly yours,
EDF REsource Capital, Inc.

Frank F. Dinsmore,
Chief Executive Officer

1050 Iron Point Road
Folsom, California 95630
*office* 916.962.3669
*fax* 916.962.1822
*toll free* 877.617.6781

File # 1366

cc:

Nanjoo Au
816 Blair Avenue
Piedmont, CA  94611


Mason Au
816 Blair Avenue
Piedmont, CA  94611-3446

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To _Samjin General Supply, Inc._
Street, Apt. No.; or PO Box No. _3600 W. Capitol Ave._
City, State, ZIP+4 _W. Sacramento, CA 95691_

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8831 6098

---

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To _Nanjoo Au_
Street, Apt. No.; or PO Box No. _816 Blair Ave._
City, State, ZIP+4 _Piedmont, CA 94611_

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8831 6104

---

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To _Mason Au_
Street, Apt. No.; or PO Box No. _816 Blair Ave._
City, State, ZIP+4 _Piedmont, CA 94611_

PS Form 3800, August 2006          See Reverse for Instructions

7007 1490 0003 8831 6111